GEORGE TONEY, Appellee, v. INTERSTATE POWER COMPANY, Appellant.

**NEGLIGENCE:** Acts or Omissions Constituting—Unguarded Electric Power Wires. The court may not say, as a matter of common law, that an electric power company was not negligent in failing to insulate or otherwise guard its power wires from contact with other wires lawfully constructed in the same vicinity, even though the power company could not, in all cases, foresee *in specific detail* the way or manner in which other wires might come in contact with such power wires. Former holdings, disapproving the so-called doctrine of "reasonable anticipation" in case of torts, reaffirmed.

**NEGLIGENCE:** Acts or Omissions Constituting—Trespassers and Licensees—Condition and Use of Lands, Etc. A telephone lineman engaged in repairing a telephone line on premises over which the line extended, is neither a trespasser nor a mere naked licensee—at least not in such sense that an electric power company owes him no duty with reference to its near-by power wires.

**NEGLIGENCE:** Acts or Omissions Constituting—Negligence per se—Unguarded Electric Wires. Unguarded electric light or power wires along public highways constitute negligence *per se.* (Section 1527-c, Code Supplement, 1913.) Applied where a telephone wire slipped from the hands of a lineman, sprang back, and, unknown to the lineman, was, before it struck the ground, carried over and in contact with an uninsulated or otherwise guarded electric power wire.

APPEAL AND ERROR:    Presentation of Grounds of Review—Theory
of Case—Inconsistent Attitudes. On appeal, one may not contend for the materiality of a fact which, on trial in the lower court, he successfully excluded on the plea of immateriality.

EVIDENCE:    Opinion Evidence—Contradiction of Statutory Requirement—Competency. Opinion evidence, contradictory of the requirements of a statute, is wholly incompetent. So held where it was sought to show by opinion evidence that insulation and other guards for electric wire were unnecessary, though required by statute.

STATUTES:    Construction—Police Regulation—Application to Prior Construction. A statute requiring insulation or other guards for electric light and power wires applies, in the absence of provisions to the contrary, to lines erected prior to the enactment of the statute.

NEGLIGENCE:    Acts or Omissions Constituting—Jury Question. Where a circuit breaker was installed in an electric power plant and automatically opened when the line was grounded, held to be a jury question whether the servant in charge was negligent in closing it when it opened at the time in question.

ELECTRICITY:    Negligence—Common-Law and Statutory Obligations. The common-law obligation to provide reasonable protection against dangers from electric wires, and the statutory obligation to provide specified guards, apply to wires carrying any kind of electricity, "static" as well as that generated for light or power purposes.

NEGLIGENCE:    Contributory Negligence—When Question of Law. Contributory negligence becomes a question of law only in those exceptional cases where the want of care of the injured party is so manifest and flagrant as to at once convince all fair and candid minds that he did not exercise the caution for his own safety which marks the conduct of ordinarily prudent men. Evidence reviewed, and held to present a jury question as to the contributory negligence of an electric lineman in not discovering that a telephone line was in contact with a line carrying a heavy power current.

APPEAL AND ERROR:    Harmless Error—Incompetent Testimony—Preliminary Offer. The reception of incompetent testimony, preliminary to a further offer, which latter is wholly rejected, followed by distinct direction to the jury to disregard the in-

competent evidence already received, may fully cure the error. So held where, in a personal injury action, the preliminary testimony received tended to show that another person at a former time had been killed at or near the place where the plaintiff was injured.

**TRIAL:**    Verdict—$8,500—Excessiveness.    Verdict for $8,500, for serious and permanent injuries to plaintiff's nervous system, sustained.    Plaintiff was 31 years of age, married, in good health at time of injury, of good habits, had been employed for a considerable time as a telephone lineman at $55 per month and expenses, and was in line for promotion.    His injuries crippled him materially in his power to do physical labor.

**PLEADING:**    Amendment—Conforming Pleadings to Proof.    To allow amendments which conform the pleadings to the proofs is clearly within the discretion of the court.    So held where, in a personal injury action, an amendment set up an additional item of expenditure.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

SATURDAY, JUNE 23, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

ACTION at law to recover damages for personal injury. There was a trial to a jury, and verdict and judgment for plaintiff.    Defendant appeals.—*Affirmed.*

*Dawley, Jordan & Dawley* and *D. J. Murphy,* for appellant.

*H. E. Taylor* and *William S. Hart,* for appellee.

WEAVER, J.—The Standard Telephone
1. NEGLIGENCE: acts or omissions constituting: unguarded electric power wires.
Company constructed and maintained a rural telephone line upon the south side of a public highway extending east and west in Allamakee County.    From its main line it extended service lines to the right and left, wherever re-

quired for the convenience of its patrons. At a certain point on the main line, a service line was carried across the road northward and across an adjacent field, to the home of one Sheetz. The first pole on the service line is 145 feet from the pole on the main line where the connection is made. Some years after the erection of the telephone line, the defendant constructed along the north side of the same highway a system of lines for the transmission of electric power. The wires transmitting the power current are carried on poles of greater height than those used by the telephone company and across the course of the Sheetz service line. Whether, at this point of crossing, the power lines were within the limits of the highway is a matter of dispute between counsel in argument, but, under the record as made by the defendant, to which we shall refer later, defendant cannot now be heard to question the location or to assert any defense based upon the claim that its line was outside of the limits of the highway. Moreover, while the descriptive terms employed by some of the witnesses are quite elastic, and could well be used to describe either a location inside the lines of the highway or immediately outside and parallel thereto, yet we think the record as a whole permits no other conclusion than that the power line at this point was within the highway limits, though near to the boundary. We are further of the opinion, however, that the question is not a controlling one, as will be more fully developed in the course of this opinion. The power company's poles carried three transmission wires, and at the point in question, the lowest of these wires was strung 30½ feet above the surface of the ground and 7½ feet above the telephone company's wire. 2½ feet above the last mentioned wire and 5 feet below the transmission wires, the defendant company carried upon its own poles two private telephone wires.

The foregoing sufficiently describes the place where

plaintiff claims to have been injured. On the date in question, September 2, 1912, and for a considerable period prior thereto, plaintiff was in the employ of the Standard Telephone Company. His duties were those of a lineman, charged with the business of keeping the line in order. Complaint having been made of some defect in the line, plaintiff was sent out to ascertain and remedy it. The evidence offered by him tends to show that, on arriving at the place where the Sheetz service line crosses the traveled path of the highway, plaintiff discovered that this wire had become slack, and was hanging so low as to create danger of interference with the public use of the highway, and he undertook to remedy this condition by taking up the slack. To accomplish this, he climbed the telephone pole at the place of connection, and made use of an instrument known as a "come-along," devised for that purpose. This device is in the form of a small block and tackle, with clamps at either end. Having climbed to the bracket and clamped one end of the come-along at the pole, plaintiff reached out as far as he could along the wire and there attached the other clamp. The slack being pulled in, he cut out a section of wire, leaving enough with which to reconnect the line at the insulator on the bracket. Then, making use of a connector, a pincher-like tool made for that purpose, he clamped it to the end of the wire and sought to pull it in sufficiently to attach or fasten it to the insulator. He had brought it nearly to place, and was about to make the twist necessary to hold it there, when the wire, with the connector attached, slipped from his grasp, and naturally recoiled or flew back in the direction of the strain from the other pole. In doing this work, plaintiff faced the south and away from defendant's power line, and away from the direction in which the wire had recoiled. Descending from the pole, he went in that direction to or near the first pole

on the service line, for the purpose of regaining the wire. On reaching it and attempting to take it in his hand, he received an electric shock, rendering him unconscious, and from which he alleges he has sustained great injury. On the arrival of assistance, it was discovered that, by reason of the force of the recoil when plaintiff lost control of the wire, or from other cause, the loosened wire had been thrown over the defendant's transmission line, from which the slack descended to the ground, thus short-circuiting the power current of over 6,000 volts. Plaintiff testifies that he did not see or know of the fact that the telephone wire had been thrown over the power lines, and that, on reaching the ground, he followed the usual course of workmen in such cases by proceeding at once in the direction of the next pole to regain the wire which had escaped him, having no knowledge or reason to apprehend that such wire had become charged with a dangerous current of electricity. In this manner, as he avers, he was brought into contact with the overcharged wire and received great injury, without contributory negligence on his part.

Plaintiff brings this action to recover damages for the injury so sustained, alleging that the same was the proximate result of the defendant's negligence, as follows: (1) Failure of the defendant to insulate its power wires or make other provisions to guard the same and prevent contact therewith; (2) failure to provide proper and sufficient safety devices or equipment to obviate or lessen the dangers arising from contact or interference with its wires; and (3) failure to construct its lines according to the requirements of law.

He also makes the general allegation that the servants and employes of the defendant were grossly and recklessly negligent in the maintenance and operation of its power lines. It may also here be said that the petition describes the telephone line and the power line as being located along

the public highway, while the answer as finally amended denied that the power line was within the highway limits. On trial to a jury, a verdict was returned for the plaintiff for damages in the sum of $8,500, and from the judgment entered thereon, this appeal has been taken by the defendant. Without attempting to mention *seriatim* the numerous assignments of error, we will consider, so far as appears necessary, those propositions which appellant has chosen to urge in its argument.

I. It is said, and numerous precedents are called to our attention as supporting the contention, that there is no evidence in the record to sustain a finding that defendant was negligent as charged. Counsel premise their discussion with the claim that the duty of the defendant to guard or protect its wires carrying high tension currents of electricity against exposure to human contact exists only where the location of the wires is such as to suggest the likelihood or probability of injury to someone in the absence of such adequate protection. In other words, if the injury complained of from such source could not reasonably have been anticipated by the party charged with negligence in failing to protect, then there is no liability. With this alleged rule as a foundation, it is next argued that the trial court should have held, as a matter of law, that defendant was not bound to anticipate the occurrence of an injury such as plaintiff claims to have sustained, and that the charge of negligence fails for want of support in the evidence. We shall not here attempt to discuss or define the limits of the rule of "reasonable anticipation" as above set forth, except to say that some courts have carried it to an extreme to which this court has never committed itself. We have recognized such doctrine as being applicable in cases involving breach of contract obligations and contract rights, but have distinctly refused to do so where damages are demanded for a tort—and negligence is a tort. See *Mentzer v. Western*

*Union Tel. Co.,* 93 Iowa 752, 760; *Black v. Minneapolis & St. L. R. Co.,* 122 Iowa 32, 36.

Again, the application of the rule, even in courts giving it effect in negligence cases, is often very materially affected by the question whether the person charging negligence is a trespasser, or mere licensee, or is injured in the course of lawful employment, or in a place where he has an unquestionable right to be. It is also a very material inquiry in such cases whether the duty with neglect of which a defendant is charged, is one of common-law obligation only or is one of positive statutory requirement. The statutes, now so common, though of comparatively recent enactment, providing in specific terms for the manner of guarding machinery and other dangerous instrumentalities, in order to avoid or minimize peril therefrom to all persons exposed to contact therewith, doubtless had their origin in the legislative desire not only to save life and limb, but to put an end to much of the haggling and hairsplitting, otherwise quite sure to arise in nearly every case, as to whether the injury complained of is one which the defendant should have anticipated.

But passing, at present, the question of statutory obligation, and assuming, for the purposes of this case, the legal rule to be as counsel state it, we are quite satisfied that the record does not support their conclusion that there is no evidence to sustain the charge of negligence. In the first place, the general rule that every person is bound to manage and control his own property and carry on his own business with due regard to the rights, safety and comfort of others is no less incumbent upon a public service corporation than upon the individual citizen. It may, if it chooses, establish and carry on a business which is inherently dangerous, or it may, for business purposes, employ or use an agency or power which, unless properly controlled

and guarded, is a source of great peril to others within its vicinity. But just in proportion to the danger so created must care and diligence be increased to keep such agency or instrumentality under control and prevent injury therefrom to others. The dangers arising from the production, transmission, storage and use of electricity are among the greatest and most subtle known to mankind. Its proper management and control involve technical knowledge, skill and care which are a sealed book to the great mass of the people, and without conscientious and intelligent care in creating and installing devices for its safe use, to say nothing of constant watchfulness in their proper maintenance, distressing and tragic results are sure to follow. The defendant in this case constructed its transmission line over and across the course of the telephone company's service line. In so doing, it could not destroy or limit or rightfully ignore the right of the telephone company, its servants and employes, to maintain its service line, or to inspect, repair or renew the same, and it must have known that such service was as likely to be required at or near the point of crossing as elsewhere. It must have known also, what is a matter of common observation, that the breaking and entanglement of electric and telephone wires, where such lines are suspended in close proximity, are among the most fruitful causes of accident and injury, and, having this knowledge, it cannot be said as a matter of law that reasonable care in the use of such an extremely dangerous agency did not charge the defendant with any duty to guard against injuries therefrom to persons whose business or duty or rightful pursuit of mere diversion or pleasure brings them into the zone of danger created by the voluntary act of such defendant in stringing its wires over and across those of the telephone company. The duty thus imposed is not, as we have just suggested, limited to the use of all reasonable means to make the place safe for the

defendant's own employes in the course of their employ-
ment, but also embraces regard for the reasonable safety
of the public generally, in so far as members of the public,
without contributory fault on their part, may be exposed
to the perils so arising. It was, of course, impossible for
defendant to foresee in specific detail the way or manner in
which the plaintiff or other person might suffer injury from
the dangers created by the construction of the line in the
manner described, but the gift of a prophet's vision is not
a condition of liability.  It is enough to impose the duty of
protection if the danger created by the construction of the
line above the telephone line was such that defendant knew
or ought to have known that protection of some kind was
necessary to save from harm all persons lawfully engaged
in that immediate vicinity.  To say the least, if persons
other than the agents and servants of the power company
had the right to be within the zone of danger created by
such line, it would be a most unreasonable proposition to
say that the company could not anticipate that such right
would ever be exercised, and thus escape the duty of rea-
sonable care to protect such persons from injury.

The contention made in argument that
2. NEGLIGENCE:
acts or omis-
sions con-
stituting: tres-
passers and
licensees:
condition and
use of lands,
etc.
plaintiff, if not a trespasser, was at best
but a mere licensee in the place where he
came in contact with the electric current,
is without merit.  Confessedly, he was not
upon premises owned or controlled by the
defendant.  If a licensee in any sense of the word, the
license was one extended to him by the owner of the soil.
The telephone company, in extending its telephone wire to
the Sheetz residence, will be presumed to have been acting
lawfully and with the consent of the landowner, and the
right to construct and maintain the line implies the right
to make repairs thereon.  Plaintiff, as the servant of the
telephone company engaged in that work, was, therefore,

neither a wrongdoer nor a mere naked licensee for whose safety no duty rested upon the defendant.

Upon this, and other points to which we have referred, but few of the cases cited by appellant have any direct bearing or application. The quotations made from such decisions are largely of an argumentative character suggested by the peculiar facts of the case in hand, rather than a statement of legal rule or principle of general application. Indeed, while we would neither adopt nor approve the discussion indulged in by some of the courts to whose decisions we are cited, we are of the opinion that they announce no rule of law which, if held to be entirely sound, would require us to hold that the trial court in this case erred in refusing to dispose of the question of defendant's negligence as one of law rather than fact.

3. NEGLIGENCE: acts or omissions constituting: negligence *per se*: unguarded electric wires. Thus far we have omitted any mention of statutory law affecting the matters here in issue, and have reached the conclusion above stated upon what we regard as approved rules of the common law of negligence; but the subject is one of which the legislature has taken cognizance. Chapter 94, Acts of the Thirty-third General Assembly (Code Supplement, 1913, Sec. 1527-c), permits or authorizes boards of supervisors to grant the right to maintain electric power lines in the public highway, and in the same act makes it the duty of the grantee to use "only strong and proper wires, properly insulated." It also provides that guard nets, or other equally effective devices, be suspended over or under power line wires wherever they pass or cross other wires. The power line in this case was not covered with any insulating material, nor was it guarded or protected by nets or other devices, except as the protection provided for by the statute may have been the

incidental result of the maintenance of the two private telephone wires attached to its poles below the power wires.

4. APPEAL AND ERROR: presentation of grounds of review: theory of case: inconsistent attitudes.

The record presented by the abstracts as to this feature of the case is somewhat peculiar. The petition charges that the line was erected along the public highway, and the original answer admitted the truth of this statement. Later, an amendment was filed to the answer, alleging that its line was erected along the highway but outside of its boundary, and upon a privately owned right of way. On the trial, plaintiff examined the county surveyor as a witness, and, having shown by him that he had surveyed and definitely located the highway where the power line crossed the Sheetz service telephone line, and had made measurements to determine where the electric line and the telephone line were located, plaintiff's counsel then asked: "How far did you find the power line from the center line of this highway, measuring under the telephone wire leading north?" To this the defendant objected, as "immaterial, irrelevant and incompetent whether the electric line is inside the public highway or not." The objection was sustained, and the answer excluded. Thereupon, plaintiff offered to show that a proper survey of the highway at the point in controversy disclosed defendant's transmission line to be within the boundary line of the highway a distance of 11 feet. Again the defendant objected, and caused the offer to be rejected as being both irrelevant and immaterial. A like offer, objection and ruling were had as to the location of the telephone line and as to the width of the highway at that point. In presenting its defense, appellant put in evidence some alleged measurements and certain photographs and plat, but in none was there any attempt to specifically show that its power line was outside of the highway boundary. Before the cause was submitted

to the jury, the defendant requested that the jury be instructed as follows:

"4. The allegation of plaintiff that it was unlawful for defendant to maintain its wires upon the public highway without having them protected against contact with other wires is withdrawn from your consideration, because said wires were erected before the statute on this subject was passed, and such statute does not apply to said wires."

This request was denied, and the cause was submitted to the jury without specific mention of this feature of the controversy. Notwithstanding this record, appellant urges in argument to this court that its line is constructed outside of the highway and upon a private right of way. This claim is not only unsupported by the evidence but is also wholly inconsistent with the attitude taken by the appellant on the trial below, and with its request for the instruction of the jury. In producing its evidence, as we have seen, it not only failed to prove its alleged location outside of the right of way, but succeeded in excluding most of the direct evidence offered by plaintiff to show the exact location, on the ground that the fact was wholly immaterial whether its line was inside or outside the boundaries of the highway.

5. EVIDENCE: opinion evidence: contradiction of statutory requirement: competency.

In apparent harmony with this view, defendant's testimony was largely directed not to the precise location of its line, but to the attempt to show that electric companies generally do not make use of nets and guards or insulating covers, and that, in the judgment of its witnesses, such protection was not efficient in practice, —a fact which, however well established, would constitute no defense if the evidence otherwise showed failure to comply with a specific statutory regulation. We are of the opinion that the statute is by its terms applicable to the situation as shown by the undisputed evidence, and that

failure to comply with its requirements was negligence. Such failure is made none the less vital by showing that the requirement is, in the opinion of experts, unwise, or that the prescribed protection would be lacking in efficiency. To hold otherwise would be to substitute the opinion of the witnesses for the legislative judgment, and make obedience to the statute optional with the companies for whose regulation it was enacted.

6. STATUTES: construction: police regulation: application to prior construction.

The suggestion by the appellant that the statute is not applicable because it was passed after the power line was constructed cannot be upheld, for the reason that the record does not show that alleged fact, and for the still better reason that the statute does not exempt from its operation companies or power lines already in existence.

7. NEGLIGENCE: acts or omissions constituting: jury question.

Plaintiff makes a further charge of negligence based on the following alleged facts. The defendant's power plant is equipped with what is known as an automatic circuit breaker, the operation of which, if we understand the witness, was such that, if its power line became grounded at any point, the circuit breaker would instantly open and shut off the current over the grounded wire, and, so long as it was allowed to remain open, there was no danger of injury to one coming in contact with the wire. Defendant's servant in charge of the power plant admits that on this occasion the circuit breaker opened; that he was near at hand at the time and at once closed it, when it flew open again, and he permitted it to remain open about three quarters of an hour. The claim of the plaintiff is that the opening of the circuit breaker gave information to the men in charge of the plant of the grounding of the power wire; that he must have known that his act in closing the circuit breaker and restoring the current over the grounded wire

rendered it a source of great danger to anyone who might come in contact therewith, and that, but for such act, the plaintiff would not have been injured. Responding to this claim, defendant says that the closing of the breaker was only for a brief moment, which must have been passed and the breaker re-opened long before the plaintiff could have descended from the telephone pole and gone back to the point where he was hurt. It is further argued for the defendant that the breaker must have been re-opened and the current cut off before plaintiff came in contact with the wire, and if he received an electric shock, it must have been from static electricity accumulated on the wire, for which condition the defendant was not responsible. Static electricity is electricity at rest. In that condition, if we understand it, the wire, or other conductor or container, is charged with electric power or energy which may have been accumulated from the clouds or the atmosphere, and which becomes active and a source of injury only when some ground connection affords it a means or way of escape. But the fact that the current from the power plant was restored for at least a short time after being cut off by the breaker is admitted, and it was for the jury to say whether the current was on at the moment of plaintiff's injury, and, if on, it was equally for the jury to say whether, in closing the breaker, the defendant's servant acted with the prudence and care reasonably required of him. True, if the servant's story is to be taken as correct in all its details, the injury to plaintiff could not be attributed to the electric current from the power plant; but it was the exclusive province of the jury to give to his testimony only such credence as they believed it entitled to, in view of all the circumstances. Assuming that the plaintiff was injured by an electric shock, and the jury has so found, it seems much more probable that it was occasioned by the grounded current from defendant's line than by static electricity. The

telephone wire which passed over the power wires also lay upon the ground. With this connection with the earth, an accumulation of static electricity upon the wires overhead would seem contrary to the laws of nature controlling these forces.

.8. ELECTRICITY: negligence: common-law and statutory obligations.

Moreover, we can perceive no good reason why the duty of the defendant to provide protection against dangers from its system of transmission lines, whether it be the common-law duty of reasonable protection or the statutory duty of maintaining specifically named or designated guards, is any less applicable to dangers from the static electricity accumulating upon its wires than to such dangers as attend the transmission of currents intended for power uses. Neither danger would exist but for the construction and maintenance of the lines. While the generated current is the result of a voluntary act, and the static power is an unintended or undesired result, both are brought into existence and become a source of danger because of conditions which the company has created for its own private advantage and profit, and the necessity and propriety of protection therefrom in the public interest is no less apparent·in the one case than in the other. As tending to sustain our conclusions in the foregoing respects, see *Yeager v. Edison Electric Co.*, 242 Pa. 101; *Staab v. Rocky Mt. Bell Tel. Co.*, 23 Idaho 314; *Musolf v. Duluth Edison Elec. Co.*, 108 Minn. 369; *Newark E. L. & P. Co. v. Garden,* 23 C. C. A. 649; *Potts v. Shreveport B. R. Co.*, 110 La. 1; *Rowe v. New York & N. J. Tel. Co.*, 66 N. J. Law 10; *Spires v. Middlesex & M. Electric Co.*, 70 N. J. Law 355; *Mahan v. Newton & B. St. Ry.*, 189 Mass. 1; *Rowe v. Taylorville Electric Co.*, 213 Ill. 318.

II. The question of contributory neg-

9. NEGLIGENCE: ligence is also raised by appellant. It is
contributory
negligence: argued, and justly, that, if defendant was
when ques-
tion of law. under a duty of reasonable care to protect

plaintiff against the dangers arising from
the construction of the transmission line at this point, then
plaintiff was likewise under duty to use reasonable care for
his own protection. No fault can be found with this proposition, and the trial court so charged the jury. As we
have often said, the question of contributory negligence is
peculiarly one of fact and not of law, save only in those
exceptional cases where the plaintiff's want of reasonable
care is so manifest and flagrant as to at once convince all
fair and candid minds that he did not exercise the caution
for his own safety which marks the conduct of ordinarily
prudent men. He is not held to an ideally high standard
of care as being free from all grounds of criticism. It is
enough if the evidence be such that the jury may properly
say that he acted as carefully as ordinary men of ordinary
judgment and experience usually do under like circumstances. In our judgment, the record does not make such
an exceptional case, and the trial court properly left this
issue to the jury. It may be conceded that plaintiff knew
of the existence of the power line and the dangerous character of the current carried thereon. He may also have
known that the line was not guarded at that point, and yet
we cannot say as a matter of law that he was manifestly
and clearly negligent in failing to discover at once that the
wire which escaped him had bounded or recoiled over the
power line. In attempting to fasten the wire about the
glass insulator, he was clinging to the telephone pole near
its top, with his back toward the next pole on the Sheetz
line. The power lines were also behind him, and several
feet higher than his head. His action in backing down the
pole and turning and "trotting," as he says, in the direc-

tion of the next pole, where he expected to find and did find the wire which had pulled from his grasp, was, to say the least, a very natural thing for a man intent upon the business in hand to do. It would seem equally natural for him, when he reached the line, to seize it and pull it out of the weeds into which it had fallen, and if, in so doing, he did not see or know that the loose end of the wire had gone over or rested on the power lines, we do not think it conclusively shows an entire lack of reasonable care on his part.

III.   Of the rulings upon the introduction of evidence to which exceptions have been preserved, we find none disclosing reversible error.   The one of which the most serious complaint is made relates to a question put to a witness by plaintiff: "Do you remember the occurrence of a boy being killed on that power line a short time ago near your place?"   Counsel further say that this question was admitted on the plea that it was merely preliminary, and when it was answered in the affirmative, the witness was dismissed without further examination.   If this statement fairly reflected the record, the conduct so described would be indefensible.   But the statement as made in the appellant's abstract is incomplete, and not quite fair either to plaintiff or to the trial court.   An amendment by appellee shows that, after the witness had answered that he remembered the incident, counsel for the plaintiff then made an offer of the matter they intended to prove by such witness, the court sustained the defendant's objection, ruled the evidence out, and clearly and distinctly cautioned the jury not to consider anything which had been said relative to any other person's having been killed or injured.   As thus explained, we find nothing in this episode on which to ground an order for a new trial.

10. Appeal and error: harmless error: incompetent testimony: preliminary offer.

IV.   Appellant finally insists that the
11. TRIAL: ver-   damages allowed are excessive. We do not
dict: $8,500:
excessiveness.   find them so large as to fairly indicate pas-
sion or prejudice on the part of the jury.
The plaintiff, at the time of his injury, was 31 years old, in
apparently good health, had been employed in telephone
service for a considerable period and was receiving wages
at the rate of $55 per month and expenses, and was in line
of promotion.   He was married, and, so far as appears, was
a young man of good habits and average ability.   The evi-
dence on his part tends to show that the electric shock of
which he complains has resulted in serious and permanent
injury to his nervous system, and crippled him to a ma-
terial extent in his power to do physical labor.   At the re-
quest of the defendant, he submitted to an examination by
experts of its choosing, by one of whom it was sought to
show that plaintiff exaggerated or may have exaggerated
the extent of his injuries,—a theory which the jury evidently
did not find well established.   Other physicians testified
that plaintiff's condition seems to be chronic and perma-
nent, and, if the jury believed the showing made in his be-
half, the verdict is not excessive.

V.   At or near the close of the trial,
12. PLEADING:   the court permitted the plaintiff to amend
amendment:
conforming
pleadings to   his petition to include a claim for expenses
proof.   incurred for medical treatment, and upon
this ruling, error is assigned.   Testimony had been offered
and admitted, apparently on the theory that the issues were
broad enough to permit the recovery of such expenses.
Amendments to conform the pleadings to the proof are
within the discretion of the trial court, and we discover
no abuse of that discretion in this instance.   Had defend-
ant expressed a desire to offer further proof on the issue so
raised, it is to be presumed that leave to do so would have
been granted.

No good reason appears for remanding the case for a new trial, and the judgment of the district court is—*Affirmed*.

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.