LESTER YOUNG, Administrator, Appellee, v. ELECTRIC SERVICE COMPANY, Appellant.

**NEW TRIAL:** Erroneous Instruction. An instruction that the term ''properly insulated,'' as employed in the statute regulating the construction of high-tension electric lines (Sec. 1527-e, Code Supp., 1913), means ''to place in a reasonably isolated condition or situation,'' is so out of harmony with the construction heretofore placed upon the statute as to afford ample grounds for sustaining the trial court in granting a new trial.

*Appeal from Delaware District Court.*—H. B. BOIES, Judge.

NOVEMBER 22, 1921.

ACTION at law, to recover damages for the death of Heman Young, who was killed, as plaintiff claims, by coming in contact with defendant's high-tension electric light wire, while he was in the act of constructing a telephone service line. There was a jury trial, and a verdict for the defendant. The plaintiff's motion for new trial was sustained, and defendant has appealed from that ruling.—*Affirmed.*

*L. M. Tillotson* and *Johnson & Donnelly,* for appellant.

*Bronson & Tierney* and *Rickel & Dennis,* for appellee.

PRESTON, J.—The ruling on the motion for new trial does not state the ground upon which it was sustained. The motion was sustained generally. A full record is presented, and all questions in the case are argued, as though the ruling appealed from were a final decision on the merits. It is doubtless true that, if there is some question in the case that, if determined, would prevent a recovery, and would be decisive of the case against plaintiff, it should be now determined. On the other hand, if there appears in the record any proper reason for granting a new trial, or if the trial court, in its discretion, was of opinion that the case had not been fairly and correctly presented or determined, we should not interfere with the granting of the new trial. Nothing is lost to appellant, except the victory already won. The whole matter can, on new trial, be fully presented again by both sides. It is not always advisable, on appeals from an order such as this, that we should determine definitely questions of fact, or, in all cases, questions of law; because, if the new trial was properly granted on any ground, the evidence and the law applicable thereto may not be presented in the same way. The two main questions in the case are whether defendant was negligent, and whether plaintiff was guilty of contributory negligence.

The negligence charged, briefly stated, is that defendant

did not insulate its high-tension wires, particularly the wire
·from which the electricity escaped that killed decedent, as re-
quired by law; failure to post danger signals; and maintaining
deadly high-tension wires too close to the ground in a public
highway.   The defendant obtained permission of the board of
supervisors to construct its line in the highway, but it is con-
tended by appellee that the permission was not properly secured.
It appears that decedent, at the time of his death, was 20 years
of age.   Practically all his life had been spent on a farm.   He
began working for the telephone company about two months
before he was killed.   He was employed as a lineman, in con-
structing a short service line to a newly constructed residence.
There is evidence tending to show that, prior to his employment,
he had never worked about electricity or electrical appliances
or high-tension wires.   Appellee contends that there is no evi-
dence in the record to show that deceased knew that the line
about which he and the others were working was carrying a
dangerous current, or that it was a high-tension line.   There
were no warning signs.   The statute does not require them, but
plaintiff takes the position that this was a common-law duty of
the defendant; and further, concerning the alleged negligence
of defendant in constructing its high-tension wires too close
to the ground, that, though not required by statute, still it
was defendant's common-law duty to construct and maintain its
high-tension line a reasonable distance from the ground on the
highway.   The few telephone poles on this service line were set
on the same side of the highway as the high-tension wires of
the defendant, when it is claimed they should have been con-
structed on the opposite side of the highway.   The reason given
for placing them on the same side as the high-tension wires is
that there were willows on the opposite side of the street, which
it was contemplated should be cut ·down, and that the telephone
poles were put on the other side temporarily, with the expecta-
tion of removing them to the other side later.   This matter was
under the control of the telephone foreman, under whom de-
ceased was working.   Deceased was working near the top of a
telephone pole, near the service wires of defendant.   He had
some telephone wire over his shoulder.   Just how the accident
happened, does not appear definitely.   The last time he was

seen, he was engaged in fastening his belt to the pole, or some such act as that. The next seen of him, his neck was in contact with the service wire. The circumstances are such that the jury would have been justified in finding that his death was caused by coming in contact with the service wire. The service wires of the defendant were not insulated, in the sense that they were wrapped or covered in such a way as to comply with the statute. Defendant's theory and contention were that defendant had constructed its wires above the ground for such a distance as that there was insulation by isolation. Defendant's service wires were about 20 feet from the ground. Evidence for the defendant tends to show that to insulate in the manner contended for by plaintiff would not be practicable, and that it would be expensive. The trial court adopted defendant's theory as to this, and instructed, in substance, that it was established without dispute that, prior to the accident, defendant obtained from the board of supervisors the franchise under which it had the right to occupy the highway with its transmission line; that the statute under which such franchise was granted provides that the owners of a high-tension line, operating under a permit from the board of supervisors and using the public highways, are required to use strong and proper wires, "properly insulated."

"In this connection, you are further instructed that 'properly insulated' means to place in a reasonably isolated condition or situation, and as the term is used in the statute referred to, when applied to this case, means only that defendant, as the owner of the high-tension line, was required to use such reasonable and practicable kind or character of construction, elevation from the ground, and material as would reasonably permit, and not unreasonably prevent or prohibit the building and maintenance of its transmission lines, or unreasonably interfere with the use or efficiency of the same, and as would afford, as far as practicable, reasonable protection to such persons, if any, as were lawfully using the highway, and while in the exercise of ordinary care on their part, could reasonably be expected to come into the danger zone created thereby, from injury by the electrical current carried thereon."

It is contended by appellant that, under the evidence, the

defendant's wires were properly insulated, as a matter of law, within the meaning of the statute. It is contended by appellee that the instruction is erroneous, and not in harmony with our own and other decisions; and as we understand it, they claim that the new trial was granted on this ground. It is likely that such is the case, but we have no means of knowing. If the trial court was of that opinion, and granted the new trial on that ground, we should not interfere with the order granting a new trial, even though, upon a strict analysis of the instruction, it were found to be correct. *Stewart v. Iowa Cent. R. Co.,* 136 Iowa 182, 186, 187. As said, the question is not so much whether the instruction is absolutely correct as it is whether the trial court abused its discretion in granting a new trial. See, also, *Rosche v. Bettendorf Axle Co.,* 168 Iowa 461, 465; *Fellers v. Modern Woodmen,* (Iowa) 176 N. W. 244 (not officially reported). We are inclined to think that the instruction under consideration is not entirely in harmony with the cases, and we are not prepared to say that the trial court abused its discretion in granting a new trial on that ground. We shall not stop to discuss all the reasons wherein it is claimed that the instruction was erroneous.

The statute in question is Section 1527-c, Code Supplement, 1913. At this point, appellant relies upon the case of *Wells v. Chamberlain,* 185 Iowa 266. In that case, there was a recovery for plaintiff. One of the grounds for reversal was that, under the statute in question, it was the duty of the court to define the words "proper insulation." Another ground was that the court excluded evidence tending to show that it was impossible for the service company's wires to be insulated, and that there was no known substance with which a high-tension wire may be wrapped so as to prevent the escape of high-tension current. Under that record, it was held that this statute did not require the franchise holder to do impossibilities, and that the defendant could show that mere failure to wrap the wires in a given way was not a failure to furnish proper insulation; and that, if such a method was impossible, it would tend to show that defendant was not negligent. Such is not the situation in the instant case. While the defendant's experts gave testimony tending to show that the wires may be insulated by isolation, and

that thereby these wires were insulated, and they give their reasons why it would be impracticable to insulate by a covering, they do say, or one of them at least, that there are a great many substances that will insulate wires besides air; that, if any of these substances are used in sufficient quantity, and in a proper manner, they will keep the electricity from escaping from the wire, even with high voltage. The matter of expense seemed to be a matter of importance with the experts. Some of the witnesses give their opinions from an engineering standpoint. One of them says that a wire surrounded by air is an insulated wire, because it is not in contact with any conductor. Insulation, as known to electrical engineers, does not mean a covering that will protect human life, or keep human beings from being in-. jured by electricity escaping from a wire; insulation means something that will not carry electricity. Generally, in speaking of an insulated wire, we mean a wire covered so that it will not let the electricity through. Some of the witnesses say that the higher the service wires are from the ground, the safer they would be; that, when they said it was safe construction to have high-tension wires put 18 to 20 feet above the surface of the ground, they did not mean that they would be just as safe to the public using the ground in that vicinity as though the wires were 5 to 10 feet higher; would not say that 18 to 20 feet was safe construction, with a telephone line built underneath the high-tension line. We have not and do not intend to go into the details of the evidence on this or the other points. We have referred to so much as bears upon the question of the instruction, and to the *Wells* case, cited by appellant.

It seems to us that one reason for holding that the instruction referred to is erroneous is that it is contrary to the statute, and reads something into it that is not found there. In *Toney v. Interstate Power Co.*, 180 Iowa 1362, 1374, defendant sought to show that electric companies generally do not make use of nets and guards or insulating covers, and that, in the judgment of the witness, such protection was not efficient in practice. We said that such fact, however well established, "would constitute no defense, if the evidence otherwise showed failure to comply with a specific statutory regulation. * * * Failure to comply with its requirements was negligence. Such failure is made

none the less vital by showing that the requirement is, in the opinion of experts, unwise, or that the prescribed protection would be lacking in efficiency. To hold otherwise would be to substitute the opinion of the witnesses for the legislative judgment, and make obedience to the statute optional with the companies for whose regulation it was enacted.''

The *Toney* case is referred to in *Graves v. Interstate Power Co.,* 189 Iowa 227, where we said that the statute requires wires of the character shown to be ''properly insulated,'' and that, if one method of insulation was impracticable or impossible, some other means of providing the required protection must be devised. ''Properly insulated'' does not necessarily mean reasonably isolated, as the trial court assumed. As said, the evidence shows that there are other methods of insulation. Neither does the statute read that the defendant was required to use only such reasonable and practicable kind and character of construction as would reasonably permit, and not unreasonably prevent, the maintenance of its lines, or would not unreasonably interfere with the use and efficiency of the same. Appellee cites cases giving the definition of the word ''proper,'' and other cases where it is claimed that we have held that the word ''insulation'' means a protective covering about wires. In our view of the case, it is unnecessary to discuss these propositions or other propositions argued. We are simply holding that there was sufficient ground for granting a new trial, or rather, for the exercise of the trial court's discretion in doing so, because of the instruction referred to. We are of opinion that there was no abuse of discretion in granting the new trial. The judgment is—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.