HARRIET CAWLEY, Administratrix, Appellee, v. PEOPLES GAS & ELECTRIC COMPANY, Appellant; WESTERN ELECTRIC TELEPHONE SYSTEM, Intervener.

**NEW TRIAL:** Verdict—Excessiveness—$15,000. Verdict for $15,000
1  for death of a telephone lineman, 24 years of age and earning $3.75 per day, held excessive.

**NEGLIGENCE:** Acts Constituting—Universal Rule of Care. The one
2  degree of care to be exercised under the law of negligence is that degree which a person of ordinary care and prudence would exercise under the same or similar circumstances. Instructions relative to the care required in the handling of electricity reviewed and approved.

**ELECTRICITY:** Care Required. Instructions relative to the duty of
3  an electric light company to guard against having its high-voltage wires come in contact with the telephone wires of another company reviewed, and held not subject to the vice of requiring the company "to inspect" without the raising of such issue in the pleadings.

**NEGLIGENCE:** Contributory Negligence—Place of Known Danger.
4  Principle reaffirmed that a person is not guilty of contributory negligence *per se* simply because he goes into and works in a place of known danger, unless he knows that it is *imprudent* so to do.

**EVIDENCE:** Opinion Evidence—Instructions. Instructions relative to
5  the *value and utility* of expert testimony reviewed, and held not to constitute reversible error.

**DEATH:** Instructions—Number and Age of Children. In an action for
6   wrongful death, it is not necessarily reversible error to instruct the
jury that it may ''consider the number and age of the children of
deceased, as bearing on the question of his incentive to industry.''

PRESTON, ARTHUR, and DE GRAFF, JJ., dissent.

**MASTER AND SERVANT:** Workmen's Compensation Act—Subroga-
7   tion of Employer. An employer who, under the Workmen's Com-
pensation Act, has paid compensation to his employee may, in order
to secure reimbursement, intervene in an action by the employee
or by his personal representative against a third party whose
wrongful act was the proximate cause of the injury; *but it is error
to permit the jury to know the amount of compensation so paid.*

**TRIAL:** Instructions—Ineffectual Cure of Error. Positive instructions
8   to the jury to disregard improper testimony may not cure error.
So held where, in an action for the wrongful death of an employee,
a master intervened, and was permitted to show *to the jury* the
amount which he—the master—had paid to the employee under the
Workmen's Compensation Act.

**TRIAL:** Reception of Evidence—Rebuttal. A defendant in an action
9   for wrongful death who seeks to show the *general* conditions of his
electrical lines, without confining himself to the *time of the injury,*
may not object to rebuttal testimony as to the condition of his
lines *at the time of trial.*

*Appeal from Cerro Gordo District Court.*—M. F. EDWARDS,
Judge.

APRIL 4, 1922.

ACTION to recover damages for the wrongful death of plain-
tiff's intestate, claimed to have been caused by the negligence
of the defendant in the location of its electric wires, which came
in contact with a telephone wire in the hands of the decedent,
who was a lineman working for a telephone company. Verdict
was returned for the plaintiff in the sum of $15,000, and defend-
ant appeals. Decedent's employer, the Western Electric Tele-
phone System, appeared as an intervener, seeking to be subro-
gated to the extent of an amount paid by it to plaintiff, under
the Workmen's Compensation Act.—*Affirmed on condition.*

*Smith & Feeney,* for appellant.

*Senneff, Bliss, Witwer & Senneff,* for appellees.

FAVILLE, J.—On or about the 17th day of September, 1919, appellee's intestate, Charles M. Cawley, was employed by the intervener, the Western Electric Telephone System, as a lineman, one of his duties being to discover and repair broken telephone wires. The situation regarding the place of the accident in question is more readily understood by reference to the accompanying plat.

It will be observed therefrom that the two streets Maple Drive and Louisiana Avenue intersect each other at an acute angle. Eastward from the junction of said streets lies what is known as the Portland or Nora Springs Road. The appellant company carried a transmission line upon its poles, extending along the southwesterly side of Maple Drive, and eastward on the south side of the Portland or Nora Springs Road. It also had a lead of wires coming from the north on the west side of Louisiana Avenue, and these wires were carried across Maple Drive to the pole on the south side thereof, and thence to the eastward.

The intervener telephone company had its line of wires fastened to a line of poles that were on the northeasterly side of Maple Drive, and which passed over Louisiana Avenue and then extended eastward on the north side of the Portland or Nora Springs Road. This lead of the intervener carried twenty-six wires located on three cross-arms of ten pins each.

As originally constructed, the appellant's line coming from the north, on the west side of Louisiana Avenue, terminated at the pole near the angle formed by the union of Louisiana Avenue and Maple Drive. It consisted of two wires on one cross-arm. These wires were known as secondary wires, and carried a voltage of 110 volts. In 1915, the appellant extended said wires across and over Maple Drive, and attached them to one of its poles on the south side of Maple Drive, and then carried them eastward along the south side of the Portland or Nora Springs Road. Thereafter, a current of 2,300 volts was carried on these wires.

The poles of the telephone company at and near the junction of Maple Drive and Louisiana Avenue are all 30-foot poles, placed five or five and a half feet in the ground. The poles of the appellant on the west side of Louisiana Avenue were also 30-foot poles, except the last one on the north side of Maple Drive, which was a 35-foot pole, as was also the one on the opposite or south side of Maple Drive. The distance between the pole on the appellant's line immediately north of Maple Drive and the pole immediately south of Maple Drive is 82½ feet. The distance between the pole of the telephone company, No. 257, immediately east of Louisiana Avenue, and pole No. 258, immediately west of Louisiana Avenue, is 74½ feet.

On the day of the accident, trouble was reported on the lines of the telephone company, and the appellee's intestate, with another employee of the telephone company, one Miller, went out in search of the trouble. Another employee of the telephone company, however, had previously arrived at the intersection of Louisiana Avenue and Maple Drive, and there discovered that one of the wires of the telephone company extending over Louisiana Avenue between said poles Nos. 257 and 258 had been broken. This was the wire that was fastened to the top cross-arm, and was on the third pin from the north. This em-

ployee cut off a portion of the wire that was hanging from pole 257, and wrapped the remainder around the pole. The portion hanging from pole 258 did not quite reach the ground, and was left hanging. Cawley and Miller arrived at the spot shortly afterwards and saw this condition and undertook to repair the line. Cawley unwrapped the end of the broken wire from pole 257 and spliced the end of a coil of wire to it. He then carried the coil of wire across Louisiana Avenue to pole 258, and climbed this pole. The evidence shows that he stood upon the lower cross-arm and placed his safety belt around the second cross-arm and was on the east side of the pole, facing toward the north. He climbed the pole, carrying the wire over his shoulder. He completed the work of splicing the broken wire to the end of the wire which he carried with him, and was apparently in the act of raising the wire over the insulator on the pin, to put on the tie wire which fastens it to the insulator, when he received the electric shock which caused his death almost instantaneously. On the day following the accident, an examination disclosed that the wire which Cawley was splicing had been burned through by contact with the west electric wire of the appellant. The evidence also tended to show that the wire which the decedent had spliced was 24 feet $1\frac{1}{2}$ inches from the surface of the ground at this point of contact. The space between the telephone wire and the wire of appellant was about $5\frac{1}{2}$ inches.

It also appears from the evidence that this wire of the appellant sagged at the time of the accident, and that when it was drawn taut, the distance between it and the wire of the telephone company at the place of contact was $14\frac{1}{2}$ inches.

There was no showing in the record that Cawley knew that the current in appellant's wires had been changed from a voltage of 110 to one of 2,300. The evidence shows that a voltage of 110 is comparatively harmless, but that a voltage of 2,300 is dangerous. The evidence also tends to show that the method employed by Cawley to repair the broken wire was the ordinary and usual one employed for said purpose.

I. The first ground urged for reversal is that the verdict of $15,000 is excessive. The evidence shows that Cawley was twenty-four years of age at the time of his death, was a married

man, with a wife and one child, and was earn-
ing $3.75 per day. He was an efficient work-
man, of good habits, and was in line for pro-
motion. He had purchased a home, and was investing a portion
of each month's salary in paying for it. He had an expectancy
of about 39½ years. Each party furnishes us with numerous
computations, based on various rates of interest, to support
their respective claims regarding the amount of this verdict.

1. NEW TRIAL:
verdict: excessive-
ness: $15,000.

No hard and fast rule can be adopted in a matter of this
kind. Decisions on the question of excessive verdicts are of little
value as precedents, because of the obvious fact of a lack of
similarity, especially in details, between any two cases. Under
all of the facts and circumstances disclosed by the record, we
are of the opinion that the amount of damages awarded in the
instant case is too large, and should be reduced. We are strongly
of the opinion that the size of the verdict was influenced some-
what by the introduction of improper evidence. We shall dis-
cuss this in a later division of this opinion, and require a reduc-
tion of the amount of damages.

II. The court gave the following instruction to the jury:

"You are instructed that it was the duty of the defendant,
People's Gas and Electric Company, to construct, maintain, and
operate its electric line with due regard to the
rights, safety, and comfort of others who may
rightfully come in proximity thereto. It may,
if it chooses, establish and carry on a business which is inher-
ently dangerous, or it may, for business purposes, employ or
use an agency or power which is a source of peril to others
rightfully within its vicinity, but just in proportion to the dan-
ger so created, must care and diligence be increased, to keep
such instrumentality or agency under control and safeguarded
so as to prevent injury therefrom to others who rightfully and
in the course of their duties come in proximity thereto."

2. NEGLIGENCE:
acts constitut-
ing: universal
rule of care.

Appellant's first claim is that this instruction, by its ex-
press terms, required appellant to have consideration for the
rights, safety, and comfort of anyone who might be in the vicin-
ity of the lines of the appellant. It is argued that there are people
who are "uncomfortable" in the presence of any electrical de-
vice or line, no matter how well the same may be protected or

guarded. This is hypercritical. The jury was in no way misled by the instruction, and could not well have misunderstood the meaning of the court.

It is also urged that the instruction is erroneous because of the reference to the use of an agency or power "which is a source of peril to others rightfully within its vicinity." It is argued that this expression was too "highly colored." The instruction did not place upon the appellant any higher degree of care than is required under the law. It must be conceded that courts and lawyers almost unconsciously frequently use the terms "highest degree of care," "extraordinary care," "great degree of care," and other similar expressions. In its last analysis, there is, strictly speaking, but one degree of care in negligence cases, and that is the degree of care which a man of ordinary care and prudence would exercise under the same or similar circumstances. A man driving a high-powered automobile can, in a sense, be said to be required to use a "higher degree" of care than a man engaged in driving a perfectly safe and well broken team of horses; but the standard is really the same,—that is, each is required to use the degree of care that an ordinarily prudent and cautious man would use in and about the particular thing. A man handling dynamite may quite properly be said to be held to "extraordinary" care, while a man handling cordwood might be said to be held to "ordinary" care; but the distinction is really one without a difference. It is in a large measure a mere use (or perhaps misuse) of terms. The man handling dynamite is held to the care which an ordinarily prudent and cautious man would exercise in handling dynamite, and a man handling cordwood is held to the degree of care that a man of ordinary care and prudence would exercise in the business of handling cordwood. So that it is essentially correct to say that a man handling a dangerous instrumentality like gunpowder, dynamite, or electricity is held to that high degree of care which a man of ordinary care and prudence would exercise in the business of handling such known dangerous instrumentality.

It was proper for the court to tell the jury that it should take into consideration the character of the instrumentality the appellant was using, and hold the appellant to the degree of

care which an ordinarily prudent and reasonable man would exercise, in handling such a dangerous instrumentality.

The instruction is not subject to the criticism lodged against it. The instructions must be read together, and construed as a whole; and when this is done, there was no error in this instruction of which the appellant can complain. As bearing on the subject, see *Scott v. Iowa Tel. Co.*, 126 Iowa 524; *Knowlton v. Des Moines Edison Lt. Co.*, 117 Iowa 451; *Martin v. Des Moines Edison Lt. Co.*, 131 Iowa 724; *Toney v. Interstate Power Co.*, 180 Iowa 1362; *Graves v. Interstate Power Co.*, 189 Iowa 227; *Evans v. Oskaloosa Trac. & Lt. Co.*, 192 Iowa 1.

III. The court, in Instruction No. 5, told the jury that it was the duty of the appellant to exercise ordinary care and diligence in the building and maintaining of its high-voltage wires, to see that they were maintained in a reasonably safe condition; and that ordinary care and diligence in this regard meant such care as persons of ordinary prudence would exercise, under the same or similar conditions. In said instruction, the court also told the jury:

3. ELECTRICITY: care required.

"If you find from a preponderance of the evidence that the defendant company, at the time in question, maintained its high-voltage wires at the crossing in question without sufficient clearance over and above the wires of said Western Electric Telephone System at said place, so as to make it dangerous to employees of said Western Electric Telephone System while repairing its wires at said crossing, and if such condition was known to the defendant, or could have been known by the exercise of reasonable care and inspection, and if the said Charles M. Cawley, when engaged in making such repairs on the wires of the Western Electric Telephone System at said point, received an electric shock from which he died, and without any negligence on his part contributing of such injury, then, in that event, the plaintiff is entitled to recover herein."

It is argued that this instruction placed upon the appellant the duty to maintain a safe place for the deceased to work; that there was no relation of master and servant between the appellant and deceased; and that the instruction was, therefore, erroneous.

The instruction is not fairly susceptible of the construction

placed thereon by the appellant. The decedent was required, in the ordinary and usual performance of his duties, to go to the place where he was at the time of the injury, and from the long existence of the poles and the wires of both companies at the place of the injury, the jury may well have found that the appellant was chargeable with knowledge of the conditions existing there. The appellant knew that linemen of the telephone company, in the performance of their duties, were required to climb the poles of said company for the purpose of repairing wires placed thereon, and to come in proximity with the wires of the appellant, in performing said duties. In *Knowlton v. Des Moines Edison Lt. Co.*, supra, we said:

"And when the lighting wire is supported on poles which support other electrical wires, which must be attended to by linemen of other companies, the company operating the lighting wire is bound to know that there is danger of such linemen coming in contact with the lighting wire and being injured thereby, if it is not properly insulated, and it will be negligent if it fails to use proper precautions against injury to such linemen of other companies [citing cases]."

We also discussed the matter at length in *Toney v. Interstate Power Co.*, supra. See, also, as bearing on the subject, *Evans v. Oskaloosa Trac. & Lt. Co.*, supra; *McAdam v. Central R. & Elec. Co.*, 67 Conn. 445 (35 Atl. 341); *Brooks v. Consolidated Gas Co.*, 70 N. J. L. 211 (57 Atl. 396).

IV. Complaint is made of Instructions 5 and 6, the particular matter complained of being the portions of said instructions wherein the court defined the liability of the appellant for negligence, if it knew, or by the exercise of reasonable care and inspection could have known, of the insufficient clearance between the wires. It is argued that these instructions imposed upon the appellant a duty to inspect, and that no such issue was raised by the pleadings. We are cited to authorities sustaining the proposition that a case must be tried on the issues made in the pleadings, and that matters cannot be considered, in order to fix a liability, which are not pleaded. This rule is too familiar and elementary to be debated, but the instructions complained of are not subject to the criticism that they offended against the rule. No fair construction of the language of the instructions

referred to warrants the interpretation that the court directed
the jury that the appellant would be held liable for a failure
to inspect, and that such. failure to inspect could be made a
basis for recovery.   The court instructed the jury as to what
would constitute reasonable and ordinary care on the part of the
appellant, and properly submitted to the jury the question of
the alleged negligence of appellant in the construction and main-
tenance of the appellant's electric wires.   This was proper.

V.   Complaint is made of the giving of Instruction No. 9,
in which the court told the jury:

"You are further instructed that a workman has no right
to work at a place which is obviously dangerous,
**4. NEGLIGENCE: contributory negligence: place of known danger.** and, if he does so, he takes the risks which are
naturally incident to such a situation; but the
mere fact, if it be a fact, that said Charles M.
Cawley may have known that the place in question was dan-
gerous, if he did so know, would not, of itself, deprive the plain-
tiff of the right to recover, if, in point of fact, the injury re-
sulted from the negligence of the defendant, and if said Caw-
ley, while on said pole and making repairs on the wire of the
Western Electric Telephone System at the time and place in
question, exercised such care and caution as a man of ordinary
care and prudence in his calling would exercise under like cir-
cumstances; and although he may have thought there was dan-
ger, yet, if the danger was not such as to threaten immediate
injury to him, or if he might have reasonably supposed that he
could safely work on said pole at said time and place in repair-
ing said telephone wire, by the use of reasonable care and cau-
tion, then he cannot be said to have been guilty of contributory
negligence, if in so doing he did, in fact, exercise reasonable
care and caution for his own safety."

We do not think this instruction is subject to the criticisms
made by the appellant.   It is particularly urged that the court
in this instruction used the expression that the decedent was
required to exercise "such care and caution as a man *in his
calling* would exercise under like circumstances."   Appellant's
argument is that a particular class of workmen, by reason of
familiarity with the danger which they encounter, are liable to

become careless and to fail to exercise the proper degree of care, and therefore that this instruction was erroneous.

We do not so regard it. As we have before stated, the degree of care required is that of an ordinarily careful and prudent man in doing the thing in hand; but certainly, an "ordinarily careful and prudent" man means one in the situation of the injured party in all respects. The degree of care required of a blind man on the street is the degree of care of an ordinarily careful and prudent man who is blind. The degree of care required of a child of tender years is the degree of care of an ordinarily careful and prudent person of such years and experience. So the degree of care required of a lineman on a telephone pole is the degree of care of an ordinarily careful and prudent man who is a lineman. If the decedent had been a novice in the business, he would have been held to the degree of care of an ordinarily careful and prudent man who was wholly inexperienced. In the instant case, he was held properly to the degree of care which an ordinary man of care and prudence in his calling would exercise under like circumstances. Appellant is certainly in no position to complain of this instruction.

It is also urged that this instruction is erroneous because the court told the jury that, if the decedent "might have reasonably supposed that he could safely work on said pole at said time and place in repairing said telephone wire, then he cannot be said to be guilty of contributory negligence, if in so doing he did, in fact, exercise reasonable care and caution for his own safety." The complaint is that the court left it for the jury to determine what was in the mind of the decedent as to whether he "reasonably supposed that he could safely work on the pole," and that this is not the true test.

We think that the construction placed upon the instruction by appellant is unwarranted and hypercritical. The instruction must be read as a whole. It is particularly stated therein that it was for the jury to determine whether the decedent *reasonably* supposed that he could safely work, by the use of *"reasonable* care and caution;" and that he would not be guilty of contributory negligence if he did "in fact exercise *reasonable* care and caution for his own safety." Reading the instruction

as a whole, together with other instructions on the same subject-matter, the jury could not have been misled. In *Travers v. City of Emmetsburg*, 190 Iowa 717, we said:

"Moreover, even if she had known of the condition of the walk, it would not have been contributory negligence, as a matter of law, for her to take that route, unless she knew and appreciated the fact that it was imprudent for her to do so. She may have known that the way was icy and slippery; yet, if she reasonably believed that, by using care, she could make the passage in safety, she was not negligent."

This is the true rule.

VI. The court instructed the jury fully in regard to the consideration of expert testimony, and in the course of said instruction, used the following phrase:

5. EVIDENCE: opinion evidence: instructions.
"Expert testimony is most useful in cases of conflict between witnesses, as corroborating testimony. The value of such testimony depends upon the circumstances of each case, and of these circumstances the jury must be the judge."

This excerpt from the instruction had better have been omitted, but we do not think it constituted reversible error to give it. The proposition of law therein contained is not erroneous.

The next succeeding clause of the instruction was as follows:

"When expert witnesses testify to matters of fact, from personal knowledge, then their testimony as to such facts within their personal knowledge should be considered the same as that of any other witnesses who testify from personal knowledge."

The preceding portions of the instruction clearly advised the jury in regard to expert testimony, and that it was for them to determine how much weight should be given it. The instruction was not inconsistent with the general instruction to the jury that it was the sole judge of the credibility of the witnesses and the weight to be given their testimony. The exceptions urged are not well taken.

VII. The statement in the nineteenth instruction that "alleged verbal statements or admissions should be received with great caution" is complained of. The instruction was a

correct statement of the law, and was proper under the record in the case.

VIII.   In Instruction No. 24, the court told the jury that the measure of recovery, if any, would be the present worth or value of the life of the decedent to his estate.   The court then

6. DEATH: instructions: number and age of children.

enumerated and pointed out to the jury the various matters which it might take into consideration in determining the amount of damages, and among other things, advised the jury that it might also "consider the number and age of his children, as bearing on the question of his incentive to industry."   Appellant cites us to *Beems v. Chicago, R. I. & P. R. Co.,* 58 Iowa 150, *State v. Rutledge,* 135 Iowa 581, and *State v. Wangler,* 151 Iowa 555, to the effect that this clause is erroneous.   All of these cases, together with other decisions of this court, were reviewed at length by us in *Nicoll v. Sweet,* 163 Iowa 683.   The instruction was evidently drawn in view of our pronouncement in the *Nicoll* case. The question involved herein was fully discussed in the majority opinion and in the dissenting opinion in that case.   It is not necessary that the arguments pro and con be repeated. The *Nicoll* case was decided by a divided court.   The court is still divided on the question, as indicated hereafter.

IX.   The Western Electric Telephone System, the employer of the decedent, intervened in this action, and set up the fact that it had been required to pay to the estate of the de-

7. MASTER AND SERVANT: Workmen's Compensation Act: subrogation of employer.

cedent, under the Workmen's Compensation Act, the sum of $3,441.11, and asked to be subrogated in said amount to the rights of the appellee, as against the appellant, in the event that judgment was obtained.

The court instructed the jury, in Instruction No. 12, that the telephone company had a right to intervene in the case and present its claim to the court, and then expressly told the jury

8. TRIAL: instructions: ineffectual cure of error.

that it had nothing whatever to do with this matter; that all of the questions in the case as to the rights of the intervener would be taken care of by the court, under the law; that the jury should in no manner consider the same; and that it should consider and decide the case as though the intervener were not in the case

at all, and without regard to any payment made by it to the estate of the decedent.

Under Section 2477-m6, Paragraph b, of Code Supplement, 1913, provision is made whereby an employer who is held liable for damages under the Workmen's Compensation Act "shall be subrogated to the rights of the employee to recover therefor." In *Evans v. Oskaloosa Trac. & Lt. Co.*, supra, and *Fidelity & Cas. Co. v. Cedar Valley Elec. Co.*, 187 Iowa 1014, we recognized the right of an employer to intervene in an action between the representative of the employee and a party charged with the wrongful injury or death. This appears to be fully warranted, under the statute. It may be proper practice that such intervention should be made after verdict, but there is no prohibition in the statute against the employer intervening at a prior stage in the proceeding. The evidence of the amount of the award under the Workmen's Compensation Act is not a proper matter for the consideration of the jury, and, as stated by the court in its instruction, the jury has nothing whatever to do therewith, in determining the liability of the appellant or the amount of damages that should be awarded.

The appellant's objections to the testimony as to the amount of the compensation that had been awarded under the Workmen's Compensation Act should have been sustained.

The instruction in question was given for the evident purpose of attempting to cure the error in the admission of this testimony. There may be cases where an error in the admission of improper evidence is cured by an instruction to the jury to wholly disregard the same. That was what was sought to be done by the court in the instant case; but it is a matter of common knowledge and experience that evidence of such a character, when once brought to the attention of the jury, does frequently have its effect upon a verdict, notwithstanding the admonition of the court to disregard the same. It is an exceedingly difficult matter for a court to determine whether or not error in the admission of such improper testimony is cured by an instruction of this character. In some cases, it undoubtedly is, and in such a case, a reversal because of the admission of such testimony, when such an instruction is given, would be wholly unwarranted. It is equally true that, in other cases, the admis-

sion of such evidence cannot be cured by such an instruction. The size of the verdict in the instant case is very persuasive of the claim of appellant that the jury was not entirely free from the effect of the testimony in regard to the award that had been made under the Workmen's Compensation Act. We think the appellant was prejudiced by this evidence. The jury might easily believe that more than $3,400 of any award made by them would not go to the appellee, but would be paid to the intervener. We are strongly persuaded to the opinion that the jury gave this fact consideration in awarding the damages. We think that this is a case where the instruction given by the court to the jury to disregard the improper testimony did not remove the prejudice that resulted from its erroneous admission. It does not necessarily follow that there should be a reversal and retrial of the case because of our conclusion in this regard, but we are disposed to give to the appellant the benefit that is claimed for this error. This can be accomplished by a reduction of the verdict in the amount of the award made under the Workmen's Compensation Act, as proven in this record. This amount was $3,441.11. If the appellee shall, within thirty days from the filing of this opinion, file a remittitur of said amount, the judgment will be affirmed; otherwise, a new trial will be granted. The reduction will also meet the question of excessive verdict heretofore discussed.

X. Error is predicated upon the refusal of the court to give certain instructions requested by the appellant. The subject-matter of these requested instructions, where pertinent, was covered by the instructions that were given by the court. We have examined them with care, and find no error in the refusal to grant any of the same that would warrant interference on our part.

XI. Error is predicated upon the receipt in evidence in rebuttal of the testimony of a witness who made observations in regard to the appellant's lines during the trial, and testified in regard thereto. The objection was urged that the evidence was not proper rebuttal, and incompetent and improper. The objection was overruled.

9. TRIAL: reception of evidence: rebuttal.

The record satisfies us that this evidence was proper re-

buttal testimony.   The appellant offered testimony regarding the custom of the appellant in the manner in which it placed the primary and secondary wires on cross-arms, and in regard to the general custom of the company in the use of brown insulators and white porcelain and green glass insulators for wires carrying a different voltage.   The appellant did not limit this inquiry to the conditions existing at the time of the injury, but inquired generally as to the practice of the company in that regard.   The testimony complained of was to meet this line of evidence, and to show the practice and custom of the appellant in regard to the manner in which said wires were placed and carried on the poles.

Upon the record, the objection interposed to this testimony was not well taken.   The appellee had a right to meet in rebuttal the evidence offered by the appellant.   We think the testimony complained of went no further than this, and was admissible. ·

Except in the particulars heretofore pointed out, we find no error in this record requiring any interference on our part, and the judgment of the trial court is, therefore,—*Affirmed on condition.*

STEVENS, C. J., WEAVER and EVANS, JJ., concur.

PRESTON, ARTHUR, and DE GRAFF, JJ., dissent as to the approval of Instruction 24 discussed in Division VIII of the opinion, and would reverse on that ground.

FAVILLE, J., disapproves of Instruction 24, but does not regard it as reversible error in the instant case.