Barta Lanza, Appellant, v. The LeGrand Quarry Co., Appellee.

**Personal injury:** EVIDENCE: ADMISSIBILITY OF TRANSCRIPT ON RETRIAL, 1 A translation of the reporter's shorthand notes of testimony taken upon the trial may be offered in evidence upon a retrial of the cause with the same force and effect of a deposition, unless the witness is present in court when the evidence is offered, in which event it is inadmissible.

**Admissibility of transcript on retrial:** CROSS-EXAMINATION. Where 2 a witness is present at the retrial of a cause, it is error to permit the reading of a transcript of his testimony on the former trial, and if called to the stand for further cross-examination his testimony should not be confined to matters covered on the former trial.

**Negligent use of explosives.** It is the duty of one keeping explosives 3 for use, to exercise the care in handling or guarding them that prudent and careful persons who deal in such articles ordinarily exercise; and negligence in this respect is a question for the jury.

**Negligence:** EVIDENCE. Under the showing of defendant's negligent 4 use and handling of explosives it was error to direct a verdict.

*Appeal from Marshall District Court.*— HON. GEO. W. BURNHAM, Judge.

WEDNESDAY, JULY 13, 1904.

PLAINTIFF was injured through the discharge of an unexploded charge of dynamite in defendant's mine, and brings this action to recover damages for the injuries received by him. Trial to a jury, directed verdict for defendant, and plaintiff appeals.— *Reversed.*

*Boardman, Aldrich & Lawrence,* for appellant.

*Binford & Snelling,* for appellee.

DEEMER, C. J.— This is the second time the case has been before us. The opinion on the first appeal will be found in 115 Iowa, 299. Plaintiff is an Italian, who came to this country in the year 1891. Shortly after his arrival here, he entered the defendant's employ, and continued therein until he received the injuries complained of. He was and is unable to read, write, or speak the English language, although he has some familiarity with his native tongue. When he entered the defendant's employment he was twenty-six years of age, but had had no prior experience in quarrying. What he knew regarding these operations and the use of explosives, he learned from observation in the quarry during the time he worked there. It seems that he was not specially instructed as to his duties, nor was he informed as to the dangerous character of the explosives used. On the morning of November 10, 1897, he and one Caputo were loading stone into a wagon near the quarry (a work for which he was employed), when they were ordered by the foreman (one Thurnes) to go to the top of a ledge and blast rock. Theretofore plaintiff had done the blasting by exploding charges in holes drilled by him, but he had had no experience in dealing with holes not drilled by his own hand. Caputo went to the tool box, secured the necessary tools and explosives, and he and plaintiff went to the place where they were directed to go. It seems that, after explosives are put into holes drilled for the purpose, it is the custom to put sand over the charge, with which to tamp it down, so that, as plaintiff started to follow his companion, he took up a shovelful of sand for that purpose. Arriving at the designated place, the two men found a hole which had been drilled some weeks before, bearing the marks of recent rains, but with no indications that it had been charged. They examined the hole carefully, and Caputo directed the plaintiff to put a tamping bar into it, in order to determine its depth. This

Lanza did, and, while attempting, as he said, to push what appeared to be some loose material down into the hole, set off an unexploded charge of dynamite, and received the injuries of which he complains. There is a dispute in the evidence on some of these propositions, but a jury would have been warranted in finding these to be the facts, so far as related. The negligence charged against the defendant is: "(a) Failure to warn the appellant of the danger existing at the place where appellee's vice principal, Gunder Thurnes, had directed appellant to work; (b) failure to provide a careful and competent foreman to direct appellant in the discharge of his duties; (c) suffering and providing for the free and unrestricted access by all grades of persons to a dangerous explosive (dynamite) with which appellee carried on its work; (d) failing to provide a regular system of inspection of the places where appellant was directed to work, in which places explosives had been formerly used; (e) failing to promulgate and enforce proper rules and regulations for the safety of appellee's employes, *viz.,* rules and regulations as to storing and handling dynamite; rules and regulations governing the issuing of dynamite to employes; rules and regulations requiring the marking of unexploded charges of explosives."

Before going to the merits of the case, there is a question of practice which should be settled. Defendant's entire testimony consisted of a translation of the shorthand reporter's notes of the evidence taken on a former trial. To this, plaintiff objected. He also produced two of the witnesses whose testimony was taken on a former trial, and, on account of the presence of the witnesses, objected to the reading of their testimony from the transcript. One of these was recalled for further cross-examination by the plaintiff after his testimony had been read from the transcript. The testimony of other witnesses was objected to because they were residents of the county where the trial was being conducted. Under the statute as

1. EVIDENCE: admissibility of transcript on retrial.

it existed prior to the year 1898, such testimony would have been clearly incompetent. *Baldwin v. R. R.,* 68 Iowa, 37. In that year the Legislature passed an act which, so far as material, reads as follows: " The original shorthand notes * * * or any transcript, *when material and competent,* shall be admissible as evidence at any retrial of the case in which the same were taken and for the purpose of impeachment in any case, *and shall have all the force and effect as a deposition* and *subject to the same objections* so far as applicable. * * * No portion of the transcript of the shorthand notes of the evidence of any witness shall be admissible as such depositions," etc. See Acts 27th General Assembly, page 16, chapter 9. The exact point now presented has never heretofore been determined by this court, and we are therefore to decide whether the trial court was in error in any of its rulings. It seems to us that this statute, in effect, supplies the grounds for the taking of the deposition of a witness; that is to say, the shorthand notes, or a translation thereof, shall have all the force and effect of a deposition regularly taken, and for just cause. When these are offered, they have the same force and effect as the deposition of a witness regularly taken, for statutory grounds. So considered, they are admissible in evidence, the same as a deposition, and subject to the same objections, so far as applicable. It is quite generally held that, where a witness whose deposition is offered is present in court at the time his testimony is desired, his deposition cannot be read. *C. R. R. v. Prouty,* 55 Kan. 503 (40 Pac. Rep. 909); *Schmitz v. R. R. Co.,* 119 Mo. 256 (24 S. W. Rep. 472, 23 L. R. A. 250); *Doe v. Adams,* 1 Tyler, 197; *Stiles v. Bradford,* 4 Rawle, 394; *Dunn v. Dunn,* 11 Mich. 284; *Hayward v. Barron,* 38 N. H. 366. This rule has heretofore been recognized in this State. *Neven v. Roup,* 8 Iowa, 207. See, also, *Whitford v. Clark County,* 119 U. S. 522 (7 Sup. Ct. 306, 30 L. Ed. 500); *Humes v. O'Bryan,* 74 Ala. 64; *Sax v. Davis,* 71 Iowa, 406. While there are some authorities an-

nouncing a contrary rule, we are not disposed to follow them.

It appears that one of the witnesses present when the transcript was read was called to the stand and cross-examined by the plaintiff, but his examination was so circum-

**2. ADMISSIBILITY OF TRANSCRIPT ON RETRIAL: cross-examination.** scribed by the rulings of the court that we cannot say that no prejudice resulted from the reading of his former testimony. But as to another who was present, his entire testimony was read from the translation, and he was not called to the stand by either party. The rulings of the trial court permitting the reading of this transcript were, as to these witnesses, erroneous. But defendant contends that all this evidence was merely cumulative, and that no reversal should be ordered because of its having been introduced. This objection hardly fits the case. The verdict was directed by the court after a consideration of the entire evidence. Had these witnesses who were present testified in person, instead of in the manner they did, the plaintiff might have made his case through the cross-examination of these very witnesses. *McNamara v. Corporation,* 88 Iowa, 502. Moreover, in cross-examination of the witness who was present and went upon the stand, plaintiff was improperly confined to matters not covered by his original testimony on the other trial. He was a very important witness, and plaintiff's counsel should not have been so limited.

Further, it is argued that plaintiff has no case, in any event, and that the opinion of this court when the matter was first before us is conclusive. On the former appeal, we held

**3. NEGLIGENT USE OF EXPLOSIVES.** that there was not sufficient evidence in the then record to justify a verdict for the plaintiff. In this record we think there was evidence from which the jury might have found that plaintiff was not furnished a safe place to work, in that defendant neglected to inspect the quarry for unexploded charges of dynamite, and failed to establish rules for the handling of this dangerous explosive. One who handles such explosives, or keeps them for use upon his premises, must use such care and caution in handling or

guarding them as prudent and careful persons, whose business it is to deal in such articles, ordinarily exercise, which, of course, is greater than that required with respect to articles not commonly considered dangerous. It was for the jury to say, under all the facts and circumstances of the case, whether such care was used. Such care might call for an inspection of the quarry for unexploded charges in the rock, and the proper marking of the same, or for a system of rules reasonably necessary to protect employes rightfully engaged in their work. Barrow on Negligence, section 40. See, also, 20 Am. & Eng. Enc. Law (2d Ed.), pages 101, 102, and cases cited; *Mather v. Rillston,* 156 U. S. 391 (15 Sup. Ct. 464, 39 L. Ed. 464); *Burke v. Anderson,* 16 C. C. A. 442 (69 Fed. Rep. 814). When plaintiff was ordered to do the work at which he was engaged when injured, he had the right to assume that the place was safe, and that there were no other dangers save such as were obvious and necessary. *R. R. Co. v. Baugh,* 149 U. S. 368, 386 (13 Sup. Ct. 914, 37 L. Ed. 772); *Neveu v. Sears,* 155 Mass. 303 (29 N. E. Rep. 472).

The matter of rules and regulations, and of the duty of the defendant to inaugurate a system of inspection, was neither involved nor presented on the former trial, and, on

**4. NEGLIGENCE: evidence.** account of the condition of the record, could not have been, for the trial court in that case took these questions from the jury. The evidence on this trial tended to show that, many times before the accident occurred, unexploded charges were left in the holes; that the battery missed fire; that fuses were cut by tamping; that pieces of dynamite were found in rock on the way to the crusher; and that what is known as "frozen dynamite," which could not be exploded by the use of powder, was left in the holes drilled to receive it, without marking these holes, or doing anything to protect the workmen against them. The jury might also have found that defendant's foreman had notice of these matters, and that proper care was not

taken to remove these charges, or to mark the holes in which they were left. On the former trial it did not appear that an unexploded charge had ever before been left in the holes, or that any place had theretofore been found unsafe by reason of hidden explosives. The case as now presented is much like *Neveu v. Sears, supra*. With the reasoning in that case we are in full accord, and are constrained to hold that the case should not have been taken from the jury. As further sustaining our conclusions, see *Anderson v. Bennett*, 16 Or. 515 (19 Pac. Rep. 765, 8 Am. St. Rep. 311).

For the errors pointed out, the judgment must be, and it is REVERSED.