## W. R. GRAVES, Administrator, Appellee, v. INTERSTATE POWER COMPANY, Appellant.

**ELECTRICITY: Insulation of Wires at Dangerous Places.** An elec-
1 tric power transmission company is under a duty to properly
insulate its wires at all points where it may reasonably antici-
pate the lawful presence of people, e. g., along and near the
trees of another, close to which trees the lines run.

**TRIAL: Cross-Examination.** Whether a witness "had warned his
2 deceased son of the danger of electrical wires" is not cross-
examination of testimony "relative to the location of the lines
and the phenomena attending them when coming in contact
with other objects."

**EVIDENCE: Testimony Inconsistent with Statutory Requirements.**
3 Testimony tending to demonstrate the impracticability of in-
sulating high-tension electrical wires by wrapping or covering
them, and the customary method of constructing such lines by
first-class systems, is wholly irrelevant in view of the statutory
requirement that such lines shall be "properly insulated."
(Sec. 1527-c, Code Supp., 1913.)

**TRIAL: Instructions Construed as a Whole.** An instruction that
4 electrical wires must be so constructed and maintained "as to
prevent injury and death," is not subject to the vice of im-
posing a liability upon "insurers," when the instructions as a
whole clearly demonstrate that the court meant nothing of the
kind, and that the jury could not have so understood.

*Appeal from Allamakee District Court.*—W. J. SPRINGER,
Judge.

JULY 6, 1920.

DEFENDANT appeals from a judgment upon the verdict
of a jury. The material facts are fully stated in the opinion.
—*Affirmed.*

*Dawley, Jordan & Dawley, D. J. Murphy,* and *J. H. Trewin,* for appellant.

*Wm. S. Hart* and *H. E. Taylor,* for appellee.

STEVENS, J.—The Upper Iowa Power Company was granted permission by the board of supervisors of Allamakee County, in 1911, to erect and maintain poles and wires in the public highway, for the purpose of conducting electricity for heat, light, and power purposes from Waukon to Lansing; and, in 1913, the defendant company succeeded to the ownership thereof, together with the equipment, franchises, etc., of said company.

1. ELECTRICITY: insulation of wires at dangerous places.

The said transmission line was constructed in front of the residence of George Gramlich. At this point, the highway curves slightly away from said residence, in front of which, on the inside and near the fence, are two cottonwood trees. Defendant's poles, which are 110 feet apart, are set so that at least one wire extends a few inches over the fence and across the Gramlich premises. The power line consists of three No. 6 copper wires, two of which are attached to a wooden crossbeam in the usual manner, about 28 inches in length, fastened securely to a cedar pole. The top of the pole extends above the crossbeam, and two of the wires are strung about 14 inches from the pole on either side. The third wire is strung about 24 inches above, near the top of the pole, and directly between the two lower wires. The wires were not covered with any insulating substance whatever, and carried a current of 13,200 volts.

On or about the 17th day of October, 1913, a son of George Gramlich's, a few months past 15 years of age, climbed one of the trees through which the high tension wires passed, and in some way came in contact therewith, and was killed. The tree was on the Gramlich premises, about 18 inches from the fence and about 16 feet from the corner of the porch, and was about 12 inches in diameter at the stump. The distance from the ground to the first

limb of the tree was 10 feet and 3 inches, and to the second limb, 12 feet and 1 inch. The distance from the surface of the ground to the lower wires was 19 feet and 10 inches. 17 feet and 6 inches from the ground, the tree forked, one limb originally extending over the fence into the highway; the other in the opposite direction. Some time after the transmission line was erected, one of the wires coming in contact with the limb extending toward the highway finally burned it off, and, later, one of the employees of defendant sawed off the stump about 3½ or 4 feet from the crotch of the tree. One wire, at the time of the accident, was about a foot above the stump, and 2½ or 3 inches nearer the pole. The crotch in the tree was 3½ to 4 feet below what we will call the inside wire, the one nearest to the tree.

Just how the accident, which occurred between 1 and 2 o'clock in the afternoon, happened, is not known. The mother testified that her son told her he was going up in the tree to get a squirrel; that she later saw him in the tree, and, a few minutes thereafter, her attention was attracted by an unusual noise; that she went to the door, and saw the boy lying in the crotch of the tree, with one foot over the wire, his hands and the other foot hanging down. She further testified that she saw a squirrel about the premises that morning, and that the children chased it, before going to school, and that she saw one on the windmill which stood near; that she had seen and knew of but one squirrel on the premises. Other witnesses testified to the removal of the body, and the condition of his hands and feet. Both of the latter were very severely burned. The burn on one hand was somewhat more extensive than that on the other. He was evidently instantly killed. The day was warm and cloudy. The tree was probably damp, as there had been a heavy fog that morning. The jury returned a verdict of $9,500. This was reduced by the court, with the acquiescence of plaintiff, to $8,000, for which sum judgment was entered.

I. The court overruled a motion by counsel for defend-

ant, based upon several grounds, at the close of the evidence, for a directed verdict. It is now urged by them that this ruling was erroneous, for two reasons: (a) That no negligence upon the part of defendant was shown; and (b) that it appeared affirmatively from the evidence that the injury was the result of the contributory negligence of deceased. The court instructed the jury that it was the duty of the defendant, in the construction and maintenance of its transmission lines, to use such care as would be reasonably commensurate with the danger involved,. and that, to charge it with negligence in maintaining its wires in the condition and position shown where the accident happened, the jury must find that the defendant was bound to anticipate that boys of the age of deceased were likely to climb into said tree and, without negligence on their part, come in contact with said wires. The court further instructed the jury that deceased had a right, at any time he saw fit, to climb the tree in question, and that he could not be charged with contributory negligence, so as to defeat plaintiff's right of recovery, by the mere fact that he climbed the tree; and that it was for the jury to say whether or not, at the time he was injured, he was in the exercise of due care, and free from contributory negligence. Several instructions were requested by counsel for defendant, but no complaint is made in this court because of the refusal of the court to give same.

Section 1527-c of the 1913 Supplement to the Code requires that electric light companies shall use for transmission lines "only strong and proper wires, properly insulated, attached to strong and sufficient supports and insulated at all points of attachment. * * * Where such wires are carried across or under wires used for other service, there shall be suspended under or over said power, heat or light service lines, properly constructed and insulated guard nets, or shall be protected by such other equally efficient devices as will prevent contact with such other service lines, in case of sagging or breaking of such wires. * * * The grantees shall be responsible for all

damages that may arise from such construction and operation under this grant or from a failure to comply with said provisions."

No claim is made by counsel for appellant that the wires in question were insulated, or that other protection was provided against injury to a person coming in contact therewith at the point where the boy was killed. On the contrary, we are confronted with the argument that insulation of the wires by wrapping or covering so as to prevent injury is entirely impracticable and impossible. We have not had occasion to define the words "properly insulated," as employed in Section 1527-c, Supplement to the Code; but it makes no difference, under the facts in this case, whether the requirement thereof is that all high-tension wires be covered or wrapped with an insulating substance, or that insulation or protection be provided only at points where those engaged in the construction, maintenance, and operation of electric lines conveying a deadly current of electricity, should, as reasonably prudent and cautious persons, know or anticipate that others, in the exercise of their lawful rights, are or may be likely to come in contact therewith, and be injured.

The tree in question was standing upon the premises of deceased's father, the wire with which he came in contact extending over and across said premises. It is not claimed that defendant had a right, under its grant, to place the wire upon or across said premises, or that it was placed there with the consent of the owner. To this extent, defendant was a trespasser. It is not uncommon for the owner of shade trees situated as is the one in question to climb into the upper branches, to remove broken branches or trim the tree; and it appears that deceased and his two younger brothers, both of whom testified that they had not been warned that the wires were dangerous, and that they did not know that fact, climbed into the tree, at various times, for purposes not unusual to children playing in the vicinity of trees. It is true that the lower limbs of the tree were rather high, but there was a board fence within a

few inches of the tree, which was only about a foot in diameter.

Many cases cited by counsel for appellant are generally in harmony with our holding in *Davis v. Malvern L. & P. Co.*, 186 Iowa 884; but we need not discuss or review these cases. It was the duty of the defendant to properly insulate its wires at all points where it might reasonably be anticipated that a person lawfully engaged was likely to be. We so held in *Knowlton v. Des Moines Ed. Light Co.*, 117 Iowa 451, which was decided prior to the enactment of the present statute. Courts have generally held that it is the duty of those engaged in erecting and maintaining wires conveying a deadly current of electricity to properly insulate the same, where they pass through shade trees, which, it should reasonably be anticipated, might be climbed by children of immature years, and without knowledge of the danger involved. *Temple v. McComb City Elec. L. & P. Co.*, 89 Miss. 1 (42 So. 874); *Mullen v. Wilkes-Barre G. & E. Co.*, 229 Pa. St. 54; *Brubaker v. Kansas City Elec. Light Co.*, 130 Mo. App. 439; *Chickering v. Lincoln County Power Co.*, (Me.) 108 Atl. 460; *Williams v. Springfield G. & E. Co.*, (Mo.) 187 S. W. 556; Curtis on Electricity, Section 512.

Mr. Justice Dunn, in *Chickering v. Lincoln County Power Co.*, supra, obviously indulging somewhat reminiscently in a touch of sentiment, but soundly, said:

"Trees growing about a family home are not primarily for boys to play in. But by climbing a tree a boy would not altogether remove himself from the pale of the protection of the law. In constructing and maintaining a line for transmitting the subtle agency of electricity, no one may with impunity totally disregard the natural habits and the childish inclinations of boys at play to climb the dooryard shade trees. Human life is short enough, and its burdens and responsibilities come soon enough, at best. To take from boyhood the legitimate pleasures and adventures of tree climbing would unduly restrict the confines

of that memory-cherished domain, and lessen life's joys both there and thereafter."

The Supreme Court of California, in *Minter v. San Diego Consol. G. & E. Co.*, (Cal.) 182 Pac. 749, recognized the duty of electric companies to be substantially as stated, and refused to apply the rule to the facts of that case. The only case coming to our attention which holds to a contrary doctrine is *Brown v. Panola L. & P. Co.*, 137 Ga. 352 (73 S. E. 580).

The correctness of the instructions referred to above is not challenged by counsel for appellant, nor is the theory upon which the case was submitted to the jury. They must be treated as the law of the case. We cannot say that the evidence of negligence and proximate cause was insufficient to justify the submission of the case to the jury.

II.   The father and mother of deceased were called as witnesses, and asked to describe the premises, and the location of the trees, fence, wires, etc., and were interrogated at some length as to certain phenomena manifested by the wire nearest the tree, when coming in contact with the branch that was finally burned off; and they also testified that the father's hand was burned by a piece of iron which fell from the pole. Counsel for defendant sought, by cross-examination, to elicit from these witnesses that deceased had been warned by them of the dangerous character of the wires, and not to climb the tree. Objection to these questions, upon the ground that same were not cross-examination, was sustained. A careful examination of the record reveals that nothing was brought out in their examination in chief upon that point. Cross-examination must be confined to facts connected with the direct examination (*Kirby v. Chicago, R. I. & P. R. Co.*, 173 Iowa 144) ; and, while the permissible range of the cross-examination of the witnesses is, to some extent, within the discretion of the trial court (*In re Will of Eveleth*, 177 Iowa 716), it must be confined, as stated, to matters covered by the examination in chief. The examination of these and other witnesses

2. TRIAL: cross-examination.

elicited that, when the high-tension wire came in contact with the limb, a light was observed, which the witnesses describe as of the size of a teacup. Deceased doubtless observed this phenomenon, but whether he knew that the wire contained a current of electricity of sufficient potentiality to be dangerous, is not shown.

Plaintiff offered no evidence upon this point, and the only evidence elicited by defendant in this connection was by the cross-examination of the two younger brothers of deceased. They both testified that they had no knowledge of the dangerous character of the wires; that they had climbed the tree, but not to a sufficient height to come in contact with the wires; that they had not been warned by their parents that the wires were dangerous; and that they had never heard their deceased brother mention the matter. The objection was properly sustained, upon the ground that the examination was not proper cross-examination.

3. EVIDENCE: testimony inconsistent with statutory requirements.  III. An expert witness was interrogated at length by counsel for defendant as to the practicability of insulating high-tension wires by wrapping or covering the same with an insulating substance. Objections to several of these questions, upon the ground that it was not cross-examination, and that same was incompetent, irrelevant, immaterial, and sought to invade the province of the jury, were sustained. Counsel also was prevented, by the ruling of the court upon objections to the testimony, from showing the customary method of constructing high-tension wires by first-class electric systems, and other matters of a similar nature. The witness, however, was permitted to testify to the effect and probable efficiency of insulation by wrapping, of wires carrying 13,200 volts.

It appears further that answers were permitted to other questions which, to a considerable extent at least, covered the information sought by the questions to which objection was sustained. The statute requires wires of the character shown to be "properly insulated," and, if one method of

insulation was impracticable or impossible, some other means of providing the required protection must be devised. The court, in *Toney v. Interstate Power Co.*, 180 Iowa 1362, said:

"We are of the opinion that the statute is by its terms applicable to the situation as shown by the undisputed evidence, and that failure to comply with its requirements was negligence. Such failure is made none the less vital by showing that the requirement is, in the opinion of experts, unwise, or that the prescribed protection would be lacking in efficiency. To hold otherwise would be to substitute the opinion of the witnesses for the legislative judgment, and make obedience to the statute optional with the companies for whose regulation it was enacted."

So far as the evidence sought to be introduced was material or relevant, we think the court permitted the same to be introduced; and defendant was not, therefore, prejudiced by the ruling of the court, if erroneous.

IV. Complaint is also lodged against 4. TRIAL: instructions construed as a whole. the fifteenth paragraph of the court's charge to the jury. The court, in this instruction, said:

"The defendant was rightfully upon the highway in front of the Gramlich premises, and had a right to construct its transmission line, together with the wires thereof, upon and over the highway in front of the same; but, in so doing, defendant was required by the laws of this state to so construct and maintain the same as to prevent injury and death to any person who had a right to be at any place where they might come in contact with said wires, and where defendant could reasonably anticipate a person might be, * * * ,"

The particular portion of the instruction complained of is the words, "so construct and maintain the same as to *prevent* injury and death."

The theory of counsel is that the court, by this instruction, imposed upon the defendant the liability of insurers. It is very doubtful whether defendant is entitled to be

heard in this court upon this question, but we are entirely satisfied that no prejudice resulted to it on account of the portion of the instruction quoted, if erroneous. The jury could not have misunderstood the charge in this respect as a whole. The court defined the duty of defendant at considerable length, and there is nothing in the charge, when considered as a whole, from which the jury could possibly infer that the liability of defendant was that of an insurer. The purpose of requiring high-tension wires to be properly insulated, is to provide safety and prevent injury. The objection to the instruction is without substantial merit. We find no reversible error in the record, and the judgment of the court below is—*Affirmed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.