C. ED. BEMAN, Administrator, Appellee, v. IOWA ELECTRIC COMPANY, Appellant.

Maꜱ 13, 1928.

*Chandler Woodbridge*, for appellant.

*Thomas J. Bray*, for appellee.

De Graff, J.—The issues are the usual ones in a personal injury case. This appeal presents three propositions, which, in interrogative form, are: (1) Was the appellant Electric Company negligent; (2) was the deceased guilty of contributory negligence; and (3) was the alleged negligence of appellant the proximate cause of the injuries to and death of the deceased? These matters were properly submitted by the trial court to the jury. It is the contention of the appellant that the evidence is not sufficient to sustain the verdict.

But one ground of negligence was submitted to the consideration of the jury. The allegation is:

"That the Iowa Electric Company was negligent in the operation and maintenance of its transmission line, in that it operated and maintained said line at or near the place of the accident without having the wires of said transmission line

properly insulated, and in proximity to the place where the bridge in question was being constructed, and in proximity to machinery which the Electric Company might reasonably have anticipated being used in the construction of said bridge, and which machinery the said company might reasonably have anticipated would come in contact with or be in close proximity to the wires of its transmission line, and act as a conductor of electricity, escaping from and transmitted over the wires of its transmission line.''

Briefly stated, the facts are as follows: Primary Highway No. 13 extends in a northerly and southerly direction at the place where the accident occurred, which point was two or three miles north of the town of North English, Iowa County, Iowa. The appellant electric company owned, operated, and maintained an electric transmission line, carrying 13,200 volts of electricity. This line ran along the east side of said highway. The poles were set about 5 feet west of the east fence line or boundary of said highway, and the poles were set within the boundaries of said highway, which was 60 feet in width. At a point two or three miles north of North English, this highway crossed the Middle English River, a small stream, with the dimensions of a good-sized creek. Iowa County had let a contract to M. O. Burnette, a bridge contractor, to construct a steel and concrete bridge with a span of 130 feet on the highway over this river. The construction work began about October 1, 1925.

Prior to the commencement of the work, the contractor spoke to the local manager of the electric company at Marengo, and advised him that work of construction on this bridge was about to be commenced, and requested the manager to have that portion of his electric transmission line immediately adjacent to the bridge moved to the eastward, and outside of the highway. Before the construction work commenced, the electric company removed two electric-line poles immediately adjacent to the bridge,—one pole being on the north side, and the other on the south side of said river or creek. The original location of the high line was about 5 feet west of the east fence of the highway. Upon the request made, the company moved the line to the east a distance of 10 feet. It was then requested to move the line at least 20 feet farther east. The evidence is in dispute as to the distance the line was moved the second time. The wires of the

transmission line were not insulated, and there were no guard nets. There is a dispute in the evidence whether or not the height of the transmission line was changed. The appellant asserts that, in moving the line, two 25-foot poles were replaced by two 35-foot poles, and that the height of the line from the ground was increased from 20 to 29½ feet. There is testimony on behalf of the appellee that, after the line was moved, the wires were not over 25 or 26 feet from the ground.

At the time of the accident, the bridge crew was engaged in driving false piling, with a hoisting machine and derrick. The decedent, Fred Miller, was one of the crew. He was a young lad 18 years of age, 6 feet, 1½ inches tall, weighed 200 pounds, and was in perfect health. In operating the derrick in question, the boom revolved from one position to another, and there is evidence that, when the top end of the boom was the farthest to the east that it could go, it was 18 inches from the nearest electric wire; and it is the claim of the appellee that it was impossible for the end of the boom or any part of the derrick to strike or come in contact with any of the transmission wires. The derrick and boom had been operated in this position for a period of three days before Miller was killed. The boom had been tested, to see how close it would come to the electric wire; and the evidence discloses that none of the men of the bridge crew knew, at the time, that an electric current would escape or jump from an electric wire. The foreman on the job did not realize that there was any danger or any hazard in operating the derrick and boom in the position and in the manner in which it was being operated at the time Miller was electrocuted. Miller and the other workmen were told and directed where to work, and there was a compliance with these orders. There is evidence that, if any part of the boom had touched the high line, the cables of the boom would have been burned, so that they would crumble and break. There was no indication that any part of the boom had come in contact with the high-line wire, and there was no injury to the cable or the machinery of the derrick.

One of the appellant's witnesses testified that a voltage of 13,200 will not arc or jump from an unbroken continuous wire on a high line. Nevertheless, Fred Miller was killed by an electric current, and said current must have come from the

high line, and was conducted down the cable of the boom and into his body.

In the light of the foregoing facts, we discover no basis for the claim of appellant that the record fails to establish any negligence sufficient to make a jury question, or that the contributory negligence of the decedent was a matter of law for the court. It follows, therefore, that the overruling of defendant's motion for a directed verdict was proper.

Appellant's liability was a fact question. True, there was positive testimony on behalf of appellant that its transmission line was well built and properly constructed, but this testimony in itself does not constitute a finality. It was expressly so held in *Welsch v. Frusch L. & P. Co.*, 197 Iowa 1012.

The doctrine of *res ipsa loquitur*, under the circumstances, finds application. *Duncan v. Fort Dodge Gas & Elec. Co.*, 193 Iowa 1127. A highly dangerous instrumentality was involved,  and the appellant was legally obligated to use that degree of diligence and foresight in the maintenance of its lines commensurate with the danger under the circumstances. The dangers incident to the production, transmission, and use of electricity are recognized as among the greatest and most subtle known to mankind. *Toney v. Interstate Power Co.*, 180 Iowa 1362.

The failure of the owner of an electric transmission line to insulate its wires, and the placing of such wires in close proximity to other conductors of electricity, ordinarily present a jury question on the issue of negligence. *Graves v. Interstate Power Co.*, 189 Iowa 227. See, also, *Toney v. Interstate Power Co.*, supra; *Knowlton v. Des Moines. Edison L. Co.*, 117 Iowa 451.

The plaintiff had the burden to establish a prima-facie case, but he was aided by statutory presumption, to wit:

"In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof. Such presumption shall not exist in favor of employees of the person or corporation operating said transmission line who are charged with or engaged in the construction, reconstruction, repair, or maintenance thereof, unless otherwise provided by the Em-

ployers' Liability and Workmen's Compensation Laws of the state.'' Section 8323, Code of 1927.

It was upon the defendant to rebut that presumption, and to show that the injury and resulting damage were not caused by any act or omission on the part of the owner of the transmission line. *Walters v. Iowa Elec. Co.*, 203 Iowa 471.

With respect to the contention of appellant that the plaintiff's decedent was guilty of contributory negligence, it is sufficient to say that such negligence becomes a question of law only in those exceptional cases where the want of care on decedent's part is so manifest and flagrant as to convince all fair and candid minds that he did not exercise the caution for his own safety that should characterize the acts and conduct of the ordinarily prudent person. *Toney v. Interstate Power Co.*, supra. In the instant case, plaintiff's decedent was not aware of the fact that he was in a place of danger. He was rightfully where he was. See *Cawley v. Peoples Gas & Elec. Co.*, 193 Iowa 536.

A review of the decisions relied upon by appellant discloses that they are distinguishable on the facts from the instant case and related cases cited herein. See *Geroski v. Allegheny County L. Co.*, 247 Pa. St. 304 (93 Atl. 338); *Hoke v. Edison L. & P. Co.*, 284 Pa. St. 112 (130 Atl. 309); *Aljoe v. Penn Cent. L. & P. Co.*, 281 Pa. St. 368 (126 Atl. 759); *Bouchon v. New Orleans R. & L. Co.*, 154 La. 397 (97 So. 587); *Druse v. Pacific P. & L. Co.*, 86 Wash. 519 (150 Pac. 1182).

We discover no error in submitting the primary propositions to the jury, and under the evidence, we are not inclined to disturb the verdict. The judgment entered is—*Affirmed.*

EVANS, FAVILLE, MORLING, and KINDIG, JJ., concur.

STEVENS, C. J., and ALBERT and WAGNER, JJ., not participating.