A. H. ALLER, Appellant, v. IOWA ELECTRIC LIGHT & POWER COMPANY, Appellee.

No. 44290.

DECEMBER 13, 1938.

186

OPINION ON REHEARING OCTOBER 24, 1939.

REHEARING DENIED APRIL 5, 1940.

E. A. Baldwin, Donnelly, Lynch, Anderson & Lynch, and William M. Dallas, for appellant.

Frank C. Byers and Frank F. Messer, for appellee.

MILLER, J.—This cause comes on for decision at this time upon resubmission after rehearing had been granted. The opinion heretofore filed by this court is published in 283 N. W., at page 81. Said opinion is now withdrawn and the following substituted in lieu thereof.

Appellant's petition alleged that, on June 14, 1936, he was attempting to stretch a wire cable from the peak of the barn on the premises occupied by him as a tenant, to a post some distance away when the wire cable came in contact with high-tension wires of appellee; that appellee was negligent in transmitting electricity at high voltage within 100 feet of appellant's barn without proper warning signs, and without proper insulation, and that appellant was free from contributory negligence. Appellee's answer was in the nature of a general denial.

At the outset of the trial it was stipulated that appellee company secured a permit to erect and maintain a high-tension line from North Liberty to Tiffin and Oxford, Iowa, prior to 1922, and constructed such high-tension line along a highway joining what is known as the Michael Petrock farm, occupied by appellant at the time of the accident herein; that in March, 1922, at the request of Michael Petrock, the owner of said farm and his son, William, who was then occupying it, appellee constructed a line of wire from the main line along said farm to the buildings of the farm, placed a transmitter on one of the posts and hooked up the buildings on the farm with the high-tension line; that the construction was at the instance of Michael and William Petrock, was located on and across the farm at

the places requested by them; that, after the construction of the line, Michael and William Petrock paid appellee the cost of the construction and the hooking up of the line with the buildings, and appellee agreed to and did furnish electricity to the farm and the buildings located thereon; that on June 14, 1936, the line was in the same location as originally designated by Michael and William Petrock, and the barn and the house stood exactly as they stood at the time of the original construction.

Appellant testified that he is a farmer, 38 years old at the time of the trial. He moved onto the farm as a tenant March 1, 1936; there were electric lights in the house when he moved in; he described the electric transmission line extending across the farm; it was there when he moved on the farm; the poles are a little bit smaller than telephone poles; he described the cross-arm as approximately 3½ feet in length with two wires carried on each, the wires being approximately 3 feet apart. He also testified, "It doesn't look like there is anything on those wires covering the metal part; it looks just like plain wire—bare wire." He further testified that the distance from the barn to the closest wire is between 18 and 19 feet; the height of the barn is 30 feet to the peak, perhaps a little more, and the distance of the transmission lines above the ground where they pass the barn is approximately 17 feet.

On June 14, 1936, appellant was working around the barn getting ready to put up hay. He put out a wire cable from the hay carrier through the gate down to the ground. He testified, "The track of the hay carrier is right at the top of the barn. I hooked this cable on there and took it down through the gate." It was his intention to fasten the lower end of the cable to a post to be set about 50 or 55 feet from the barn. He carried the end of the cable out to the place where he intended to place the post. While so engaged the wire cable came in contact with one of the transmission wires, resulting in appellant's injury. In describing the circumstances existing at the time of his injury, appellant testified:

"At the time that I was going over to the place where I wanted to go to set this pole I was walking east. I had ahold of the cable at that time, I think with both hands. I think my back was towards the barn as I was walking east. As I walked east I could see the barn and I could see where I wanted this

post. That is what I was looking at. I had to get in line with this track; I must have been looking at both sides. I think I was looking back at that track. I would have to to get in line. My idea is that *I was looking at that track in order to get lined up*. I was right at the spot where I wanted to set the post when this event happened. It happened when I got out where this post was supposed to be. *I was pulling this cable tight.* It was my idea and intention to have that cable perfectly tight from that track at the barn out here to this point that was off to the east. I never put a cable from the peak of that barn or from that track out there in that yard before. These wires and poles and these high-tension lines and everything were just the same there on the 14th day of June 1936 as they were at the time I moved on the farm. * * * At the time that this accident happened, I was about 50 or 55 feet from the barn.'' (Italics supplied.)

Appellant also testified that he had lived on a farm called the Gordon place for three years and used electricity there. He testified : ''A high line goes by the Gordon farm. We had electricity there. I know it came from that high line that went right by the place there. I couldn't say whether that is the same high line that goes along the south side of the Petrock farm.'' He also testified, ''I didn't enter into a lease with Mr. Petrock. I rented the place from his mother, who lives at Swisher, and I knew when I rented the farm that there was electricity there.'' He also described the high line of appellant along the side of the farm. There is no evidence as to the voltage of the high line except appellant's testimony that he saw certain signs along the road which he thought read ''6600 Volts—Danger''. It is not clear from the record just when he saw these signs. On re-direct examination, appellant also testified, ''I have never made any study of electricity ; I don't know what a volt is.''

At the close of appellant's evidence in chief, appellee moved for a directed verdict. The motion is in 12 paragraphs. Among the grounds stated in the motion, there was presented to the court the question whether, under the undisputed record as it then stood, appellant had established that his injury and damage resulted from negligence of appellee, and whether he had properly sustained the burden of proving himself free from

contributory negligence. The motion was sustained generally, and judgment entered accordingly. Appellant assigns as error the court's action in sustaining such motion.

We are of the opinion that the trial court's decision herein was right. On the question of negligence of the appellee, the petition of appellant, as amended, asserts three propositions: (1) The absence of warning signs, (2) the close proximity of the transmission line to the barn, (3) the absence of insulation on the wires. Were any one of these grounds of alleged negligence to be sustained, it would be on the theory of some duty imposed upon appellee other than the statutory duties prescribed by the code.

Section 8328 of the Code provides:

"At any crossing of any highway by such transmission line, the poles or towers next *to the highway* shall be labeled with the following words: 'Danger . . . . . . volts electricity', filling in the voltage."

It will be noted that these signs are required to be only along the highways. There is no evidence to justify a finding that such signs had not been erected by appellee. The evidence clearly indicates that they were properly erected. The only dispute about them is whether appellant noticed the signs before his injury.

As to the proximity of the transmission line to the building, section 8327 of the Code provides:

"No transmission line shall be constructed, *except by agreement,* within one hundred feet of any dwelling house or other building, except where said line crosses or passes along a public highway or is located alongside or parallel with the right of way of any railway company."

In this case, the transmission line was within 100 feet of the buildings on the farm, but the record clearly shows that it was placed there *by agreement,* having been designated by the owner of the farm and his tenant when the original construction was made. Section 8327 also provides for compliance with rules, regulations and specifications established by the Board of Railroad Commissioners. Appellant does not rely upon any

such rules, regulations or specifications and, by reason of other matters hereinafter stated, we see no occasion to discuss them here.

Section 8326 of the Code provides:

"Such lines shall be built of strong and proper wires attached to strong and sufficient supports properly *insulated at all points of attachment.*"

In this case, there is no claim that the statute was not complied with. The absence of insulation was at a place other than a point of attachment, and at a place where insulation is not required by statute.

The only statute which would seem to give any support to appellant's claim is section 8323, which provides:

"In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof."

The writer of this opinion is inclined to the view that the presumption was successfully rebutted but it is unnecessary for the court to decide that question because we are convinced that appellant failed to sustain the burden of proving that he was free from contributory negligence.

On the question of contributory negligence, the decision of this court in the case of Murphy v. Iowa Electric Co., 206 Iowa 567, 220 N. W. 360, seems to be quite persuasive. That was an action to recover damages for the alleged wrongful death of one James Murphy. At the close of the plaintiff's testimony, the trial court directed a verdict in favor of the defendant. On appeal, the judgment was affirmed by this court. The record showed that the decedent was a laborer, 36 years of age, possessed of a vigorous mind and robust constitution. His duties consisted of hauling dirt in connection with a grading project on the highway between Guthrie Center and Panora, Iowa. There was a high line along the highway that was being graded. The signs, required by section 8328 of the Code, were in place. While Murphy was driving his team, he encountered a telephone wire which had become loose from a spike on the pole and was swinging about 4 feet from the ground. The spike was about

2 feet from the transmission wires. Murphy was instructed by his foreman to reach up and place the telephone wire over the spike. He endeavored to do so, but found the height too great to be thus reached, and then devised a scheme of his own. He took the telephone wire in his hands and gave it a swing in order to loop it over the spike on the pole. While it was thus in motion, the telephone wire went up rainbow shape, came in contact with a high-line wire and caused Murphy's electrocution. This court held that Murphy was guilty of contributory negligence as a matter of law. In so holding, the court states in 206 Iowa, at page 576, 220 N. W., at page 364, of the opinion:

"According to the testimony, this 'spike' was not more than 2 feet below the electric wires. Of necessity, then, a swing of the telephone wire, produced by Murphy, must have been a sufficient cause for it to take a rainbow shape of such angle that inevitably, when going over the 'spike,' it would come in contact with the electric wire. Otherwise the telephone wire could not have been placed upon its support through the manner selected. The angle required to complete the loop was itself a condemnation of Murphy's scheme. Any adult, sane man could see and would know this. How, then, could any jury say this was prudent, and the exercise of such care as reasonable men would take? Plainly, it was not, and minds of honest and reasonable men cannot disagree concerning the negligence of Murphy's act, in view of these conditions."

It seems to us that the action of appellant, under the record presented herein, is subject to the same condemnation. Whereas Murphy, in the cited case, threw the wire into contact with the high-tension line, appellant drew his steel cable into contact with appellee's power line. In each instance, it seems to us that the contact which produced the injury was the result of conduct on the part of the person injured under such circumstances that no jury could say that it was prudent and in the exercise of such care as reasonable men should take.

In both cases, the accident was the result of commonly known propensities of electric current. In each case, the man was approximately 36 years of age. In the cited case, he was a laborer. In the present case, he was a farmer. Both men are presumed to know, what is common knowledge of all intelli-

gent persons in this day and age, that a metal wire will conduct electric current and one, who has hold of a metal wire or cable and causes it to come in contact with a power line, is certain to be injured.

Counsel for appellant contend vigorously that appellant did not know the dangerous character of his act because he testified, "I have never made any study of electricity; I don't know what a volt is." Such testimony is wholly insufficient to establish the contentions of counsel. One does not have to make a study of electricity, or be able to accurately define the term "volt", to be possessed of that knowledge which is common to all intelligent persons in this day and age. The record shows that appellant had lived for three years on a farm where electricity was supplied by a high line. His testimony, both on direct and cross-examination, demonstrates that he was familiar with high lines and transmission lines and the use of electricity for years. We see no reason for not imparting to appellant the same knowledge which was imparted to Murphy in the case heretofore cited.

Under the record herein, appellant knew of the presence of the power line. He knew that the wires were not insulated. He had hold of a steel cable. He was lining up the cable when injured. His own testimony shows that he was looking directly toward the place where the cable came in contact with the transmission line. Appellant was just as guilty of contributory negligence in drawing his cable in contact with the power line as Murphy was in throwing the telephone wire in such a way that it came in contact with the high-tension line.

The contention of appellant's counsel in this regard is wholly without merit. Counsel contend:

"This Court would not be warranted in saying as a matter of law that appellant saw the transmission line. Standing where he was and looking at the track, the transmission line was beneath the direct line of his vision. He was not conscious of the presence of the line and his testimony that 'when I took out this slack this must have connected, because that was the last I knew', evidences that he was not aware of the contact except as he reasons from the result."

It is true that appellant was looking at the track and

the transmission line was beneath the track. What counsel overlook is the fact that appellant was beneath the transmission line and the transmission line was, therefore, between him and the track, and directly in his line of vision. Appellant either saw the transmission line and disregarded its presence, or looked at it and did not see it. In either event, his conduct was negligent. If, as a result of appellant's conduct, someone else had been injured, who could say that appellant was not negligent in producing such injury? The fact, that appellant himself was injured, does not alter the fact that it was negligence. The only difference is that, in place of being actionable negligence which would support recovery, it becomes contributory negligence that defeats recovery. Also, whereas actionable negligence must be the proximate cause of the injury, contributory negligence need only contribute to the injury.

We are satisfied that the trial court's decision on the motion for directed verdict was right. Accordingly, the judgment is affirmed.—Affirmed.

OLIVER, C. J., and HALE, BLISS, MITCHELL, and STIGER, JJ., concur.

RICHARDS, HAMILTON, and SAGER, JJ., dissent.