GERTRUDE SHETTLER, Administratrix, Appellant, v. FARMERS LIGHT AND POWER COMPANY et al., Appellees.

No. 46328.

OCTOBER 19, 1943.

Louis J. Kehoe, of Washington, for appellant.

S. W. Livingston, of Washington, Barnes, Chamberlain, Hanzlik & Wadsworth, of Cedar Rapids, and F. Paul Harned, of Marengo, for appellees.

HALE, J.— ██ This is an action for damages brought by the administratrix of the estate of William E. Shettler, de-

ceased, who was killed on July 27, 1942. There was a trial to a jury and most of the facts in the case were stipulated. William E. Shettler, aged thirty-four, lived in Washington County, Iowa, his residence being on the east side of County Trunk Highway C. His home and the quarry which he operated were a short distance south of the English River. Highway C runs north and south past the Shettler quarry and north across a bridge over the English River. The quarry was on the east side of Highway C and the stone was ordinarily blasted out by explosives. On the west side of the highway were telephone poles carrying a large number of wires. The defendant Iowa Electric Company built and maintained a transmission line along this highway and sold the current in the part of the territory with which this case is concerned to Farmers Light and Power Company, which in turn retailed it to the users along the line, purchasing such amount of current as was necessary for its customers. The transmission line was operated under a franchise of the Iowa State Commerce Commission authorizing the erection, maintenance, and operation of a 6,600-volt line. Such line was not less than 22 feet from the ground on the east side of the highway and not less than 18 feet from the ground at any point between the poles near the Shettler corner. The wire was insulated at all points of attachment where it came in contact with the poles but was uncovered at all other points.

On July 27, 1942, decedent, in his quarry operations, placed a dynamite charge at the quarry 25 to 30 feet east of the transmission line and to explode the charge used a percussion cap attached to two contact wires 125 to 130 feet in length. He placed his service truck alongside the highway, approximately 35 to 40 feet west and 75 feet south of the dynamite charge and around the southwest corner of the quarry, the contact wires extending beyond the transmission line into the road where the truck was parked. These wires were covered with insulation except about five inches which were uninsulated and held in decedent's hands. In order to explode the dynamite he did not use the plunger frequently employed for such purpose, but placed one wire on the pole of the generator of the truck and the other on the casing of the generator while the truck was running. The current from the generator caused

the dynamite to explode and the explosion threw the wire from the charge over the transmission line while Shettler still held the uncovered ends of the wires in his hands and he was killed by the current. It is conceded that in the installation and maintenance of the line the defendant Iowa Electric Company complied with the rules of the National Electric Safety Code, which provide that the minimum vertical clearance of wires above ground in lines of this class in rural districts should be not less than 18 feet. It was conceded also that the electric company had knowledge that Shettler was carrying on quarrying operations and that blasting was being carried on, but had no knowledge of the details or the manner in which the blasting was being done. Before the 20th of July 1942, one of the poles had been loosened by a blast from such operations, and this pole, which was the one nearest to the English River to the north, had been replaced by two other poles along the highway to support the line. It was further conceded that decedent, at the time he was carrying on his blasting operations, knew of the existence of the high line as relocated and knew that it was a high-voltage transmission line.

At the close of plaintiff's evidence each defendant moved the court to direct a verdict for the defendants on the grounds of failure to establish negligence as set forth in the petition, lack of evidence, contributory negligence, that the evidence showed operation of the transmission line in compliance with the law, and that decedent was in control of the blasting operations and equipment with full knowledge of the location of the transmission line and of the danger. The motion of Farmers Light and Power Company was on the further ground that it had no interest in the transmission line nor anything to do with its operation, but was only a purchaser and customer of the Iowa Electric Company. The motions to direct verdict were sustained and plaintiff appeals.

The two principal questions presented by this appeal are: (1) Were the defendants, or either of them, guilty of negligence? (2) Was the decedent guilty of contributory negligence?

I. Appellant assigns as error that the court ruled appellees were not guilty of negligence because they had complied with the minimum requirement standards and specifica-

1246

tions for construction set forth in a certain National Electric Safety Code adopted and used by that industry. This, however, was not the only ground of the motions, which included failure to establish the allegations of negligence set forth in the petition, failure to show by the evidence any act of negligence by the defendants which was the proximate cause of decedent's injuries, compliance with the law, and contributory negligence. The allegations of negligence were: (1) That they "operated and maintained said lines at or near the place of the accident without having the wires of said transmission lines properly insulated" (2) "and in proximity to the place where the quarry in question was in operation, and where they might have reasonably anticipated machinery * * * or other instrumentalities used in said quarry operations might come in contact with or be in close proximity to the wires of said transmission lines and act as a conductor of electricity, escaping from and transmitted over the noninsulated wires of its transmission lines."

■ Appellant thus pleads two specific grounds of negligence, the alleged defective condition of the wires and the alleged wrongful location of the line. Thus pleading, she cannot recover on the theory of res ipsa loquitur. Harvey v. Borg, 218 Iowa 1228, 257 N. W. 190; Hanna v. Central States Elec. Co., 210 Iowa 864, 232 N. W. 421; Orr v. Des Moines Elec. L. Co., 207 Iowa 1149, 222 N. W. 560; Dilley v. Iowa Pub. Serv. Co., 210 Iowa 1332, 227 N. W. 173; and Smith v. Iowa Pub. Serv. Co., 233 Iowa 336, 6 N. W. 2d 123. And appellant is not entitled to rely upon the provisions of Code section 8323, since this presumption, as in the doctrine of res ipsa loquitur, would apply only where general negligence is pleaded. Dilley v. Iowa Pub. Serv. Co., supra. But, in any event, if there was contributory negligence it would bar recovery. See Aller v. Iowa Electric L. & P. Co., 227 Iowa 185, 288 N. W. 66.

As to the negligence pleaded, on the question of insulation appellant cites various cases, including Toney v. Interstate Power Co., 180 Iowa 1362, 163 N. W. 394; and Graves v. Interstate Power Co., 189 Iowa 227, 178 N. W. 376. These cases were decided under section 1527-c of the 1913 Supplement to the Code, which required "strong and proper wires, properly

insulated," but the statute now provides that the wires be "properly insulated at all points of attachment * * *." Section 8326, Code of 1939. Appellant largely relies upon the case of Beman v. Iowa Elec. Co., 205 Iowa 730, 218 N. W. 343. The facts in the two cases are not similar. The injury in that case resulted from a "jump" of the current over a space of only 18 inches. There was a dispute in the evidence as to whether the power line was moved a second time and as to the height of such line. The case held that the doctrine of res ipsa loquitur was involved and that the statutory presumption created by section 8323 also applied. The opinion cites the Graves case and the Toney case above referred to, as well as Knowlton v. Des Moines Edison L. Co., 117 Iowa 451, 90 N. W. 818, in support of its proposition that the failure to insulate and the placing of such wires in close proximity to other conductors of electricity ordinarily present a jury question. Under the present statute these cases would not be authority. The case is distinguished in the opinion in Dilley v. Iowa Pub. Serv. Co., supra, in these words, at page 1337 of 210 Iowa, page 175 of 227 N. W.:

"In Beman v. Iowa Elec. Co., 205 Iowa 730, the utility company failed to maintain its isolation in that it placed its wires too close to the 'boom' of a bridge gang."

Neither condition was present in the instant case. The insulation was in conformity with the statute and the poles were not placed in close proximity to other conductors of electricity. Both the insulation and the location and construction of the power line complied with the requirements of the National Electric Safety Code which we have held to be "universally accepted as a standard of construction and of upkeep. * * * it is difficult to conceive a better test of care than compliance with its provisions." Smith v. Iowa Pub. Serv. Co., supra, 233 Iowa 336, 337, 6 N. W. 2d 123. See, also, Dilley v. Iowa Pub. Serv. Co., supra. Under the record we are satisfied that the evidence fails to disclose any negligence on the part of the appellees. The wire of the power line was at least 25 to 30 feet west of the stone where the dynamite was placed. There was no metal capable of transmitting electricity in the vicinity. The wires

were as isolated as they could be. The west side of the road was already occupied by telephone wires, so no power line could be placed there. There was no reason to apprehend that anyone would either deliberately or carelessly cause connecting wires to be thrown over the power line, any more than to expect uninsulated parts of wires thus thrown to be held in a person's bare hands. The facts fall short of any similar conditions where the court has found negligence, and in the present case are even stronger in favor of appellees than in our latest case involving this form of claimed negligence, Smith v. Iowa Pub. Serv. Co., supra.

 II. Appellant also alleges that the court erred in sustaining appellees' motions to direct a verdict and submit to the jury the issue of contributory negligence. We do not disagree with appellant that the question of contributory negligence is ordinarily a jury question, but it needs no citation of authority to show that in many instances it becomes a question of law. Appellant must establish such freedom from contributory negligence. We need only cite some of our recent cases. See Aller v. Iowa Electric L. & P. Co., supra, 227 Iowa 185, 288 N. W. 66, citing Murphy v. Iowa Elec. Co., 206 Iowa 567, 220 N. W. 360. Dilley v. Iowa Pub. Serv. Co., supra, cited by appellees, while not holding that the child who was flying a kite was guilty of contributory negligence, possibly because of his age, nine years and three months, yet says, at page 1337 of 210 Iowa, page 175 of 227 N. W.:

"The accident resulted, not from any failure on the part of the defendant to meet all the statutory requirements of construction, but because the copper wire was carried up to it. Unless the company was already negligent in its manner of construction and maintenance, it did not become negligent by the mere act of another. The fact, if such, that such act was to some degree irresponsible, because of the tender age of the child, could have no influence upon the quality of the defendant's conduct. In such a case, the wrongful act of the injured party is to be deemed the proximate cause of his injury."

In the present case the decedent had full knowledge of his surroundings; he knew the location of the power line, and he

knew further that he was performing an act which had many elements of danger. He was handling explosives and in so doing was held to a high degree of care. See Eves v. Littig Constr. Co., 202 Iowa 1338, 212 N. W. 154, and cases cited; Lanza v. Le Grand Quarry Co., 124 Iowa 659, 100 N. W. 488; and Watson v. Mississippi River P. Co., 174 Iowa 23, 156 N. W. 188, L. R. A. 1916D, 101. It was decedent's duty to provide for safety and guard against such danger as would ordinarily and reasonably be anticipated. It was to be expected that the immediate vicinity of the explosion would be disturbed. Yet, knowing these things, he took no precautions to secure or protect the wires from his car to the dynamite, nor to provide for his own safety by the use of a plunger such as is ordinarily used, but held the uninsulated ends of the wires in his bare hands. We hold that the evidence shows his own negligence as a proximate cause of his injuries, and that there can be no recovery.

Other questions are presented, including the admission of certain testimony, which it is unnecessary to discuss.

Since we hold that the Iowa Electric Company is not liable, it would necessarily follow that the Farmers Light and Power Company, which was merely a customer purchasing current for retailing, is also in no way liable.

The rulings on the motions for directed verdict were correct, and the cause should be, and is, affirmed.—Affirmed.

All JUSTICES concur.